**WE'RE TALKIN' MARDI GRAS, LLC**

v.

**Carl M. DAVIS, II, et al.**

**No. Civ.A. 02–1213.**

United States District Court,
E.D. Louisiana.

Feb. 25, 2002.

William David Kiesel, Ronald Bennett Ford, Jr., Christopher D. Kiesel, David Bennett Parnell Jr., Roy, Kiesel, Keegan & DeNicola, Baton Rogue, LA, for Plaintiff.

J. Marc Vezina, Gerard Scott Vezina, Vezina & Gattuso, Gretna, LA, Daniel Lund, Montgomery, Barnett, Barnett, Brown, Read Hammond & Mintz, New Orleans, LA, for Defendants.

### ORDER AND REASONS

FALLON, District Judge.

Before the Court is defendants' motion to dismiss for lack of personal jurisdiction over the defendants. The Court conducted an evidentiary hearing in this matter on February 22, 2002. Having reviewed all of the evidence and the applicable law, IT IS ORDERED that the defendants' motion be and hereby is GRANTED. Accordingly, this action (01–1213) is DISMISSED WITHOUT PREJUDICE, each party to bear its own costs.

### I. BACKGROUND

This legal malpractice action arises out of the legal services rendered by the defendants, a Georgia patent attorney, Carl Davis, and his law firm, Kennedy, Davis & Hodge, LLP, for the plaintiff, We're Talkin' Mardi Gras ("WTMG"), a Louisiana limited liability company. According to the plaintiff, in September 1999 Davis was hired to obtain for WTMG the rights to various intellectual property related to a lighted bead necklace invention as well as to advise WTMG on legal issues related to the commercialization of the invention. According to the plaintiff, this representation included preparation and filing of a U.S. patent application, prosecution before the U.S. Patent Office, and communications with other Louisiana-based companies and individuals on behalf of the plaintiff. Plaintiff further claims that from September 1, 1999 through March 2001, Davis continuously advised the plaintiff on various aspects of the WTMG business. According to plaintiff, this included the structuring of a marketing agreement with other New Orleans-based businesses, licensing aspects of the invention, assignments of the invention, indemnification agreements with plaintiff's clients, insurance issues involving the invention, and confidential disclosure agreements.

During the course of this relationship David Day and Jeffrey Relf, two of the three WTMG partners, sought to buy out their third partner's, Leslie Jackson, interest in the invention.[1] Jackson had a falling out with the two partners, departed WTMG, and subsequently began to compete with WTMG by marketing the lighted bead invention. WTMG claims that the defendants are liable for legal malpractice in having failed to advise WTMG that to ensure its exclusive control of the invention it had to obtain the exclusive rights to the invention via a written assignment from the inventors.

Defendants seek dismissal of this action under Fed.R.Civ.P. Rules 12(b)(2), 12(b)(4), and 12(b)(5) for lack of in personam jurisdiction and insufficiency of process. In essence, defendants contend that his contacts with Louisiana are not sufficient to assert jurisdiction.

### III. ANALYSIS

#### A. Burden of Proof

Where the alleged facts are disputed and the Court's jurisdiction is placed at issue, the party who seeks to invoke the jurisdiction of the district court bears the burden of establishing it. *Felch v. Trans-*

---

1. David Day is a resident of Houston, Texas; Jeffrey Relf is a resident of Harris County, Texas, and Leslie Jackson is a resident of New Orleans, Louisiana.

*portes Lar–Mex*, 92 F.3d 320, 326 (5th Cir.1996). Consequently, in this case the burden is on the plaintiff. Where the district court rules on a motion to dismiss for lack of jurisdiction without conducting an evidentiary hearing, the plaintiff may carry his burden by presenting a prima facie case of jurisdiction. If the trial court holds an evidentiary hearing or the case proceeds to trial, the burden on the plaintiff shifts to a preponderance of the evidence. *See id.*

In the present case, this Court heard oral argument on defendants' motion to dismiss for lack of personal jurisdiction on December 12, 2001. Finding that questions of fact existed as to the nature and extent of the contacts between the defendant and Louisiana, the Court ordered an evidentiary hearing. Thus, at this proceeding, the plaintiff now bears the burden of establishing jurisdiction based on a preponderance of the evidence.

### B. Personal Jurisdiction

For a Federal Court to exercise personal jurisdiction over a nonresident defendant two requirements must be met. First, the nonresident defendant must be amendable to service of process under a state's long-arm statute. *Jones v. Petty–Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir.1992). Second, the assertion of in personam jurisdiction must be consistent with the 14th Amendment's Due Process Clause. *Id.* Because Louisiana's long-arm statute extends to the limits of due process, the Court need only determine if subjecting Carl Davis to suit in Louisiana would offend the Due Process Clause of the 14th Amendment. *See* LSA–R.S. 13:3201(B); *see also Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1191 (La.1987).

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful "contacts, ties, or relations." *Dickson Marine Inc. v. Panalpina*, 179 F.3d 331, 336 (5th Cir.1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Due process will be satisfied if the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The court's jurisdiction may be either specific or general. When an action "arises out of" a defendant's contacts with the forum, a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). This type of jurisdiction, in which the suit arises out of or is related to the defendant's contacts with the forum, is commonly referred to as "specific jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Additionally, there may be instances "in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [a foreign defendant] on causes of action arising from dealings entirely distinct from those activities." *International Shoe*, 326 U.S. at 318, 66 S.Ct. 154. When this situation prevails, the court is said to have "general jurisdiction." *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868. Defendants only can be subject to general in personam jurisdiction if they have "continuous and systematic" contacts with the forum state. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ In determining either specific or general jurisdiction, the existence of a contractual relationship, although relevant, does not automatically establish sufficient minimum contacts. *Burger King*, 471 U.S. at 478, 105 S.Ct. 2174. A contract is merely an intermediate step serving to tie up prior consequences which themselves are the real object of the business transaction. *Id.* A corollary to this rule has been recognized by the Fifth Circuit in the context of the attorney-client relationship. In *Trinity Industries, Inc. v. Myers & Associates, Ltd.*, 41 F.3d 229, 230 (5th Cir.1995), the court stated that "the bare existence of an attorney-client relationship is not sufficient" to establish jurisdiction over a party. Instead, the court must consider the particular contacts made with the forum state in the context of the attorney-client relationship. In other words, the factors of prior negotiations and contemplated future consequences, along with the terms of a contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. *Id.* Moreover, the unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In determining what type of contacts are significant in the context of the attorney-client relationship, a review of the case law is instructive.

■ In the *Trinity* case, Trinity Industries, a Delaware corporation with its principal place of business in Texas, hired an Illinois patent lawyer for representation in patent and trademark matters. Trinity filed a legal malpractice claim against the lawyer in Texas. While noting that "the bare existence of an attorney-client relationship is not sufficient" to confer jurisdiction, the court found that there was more – specifically, that the Defendant had purposefully availed itself of the benefits and laws of Texas in that the representation extended for a period of eight years and the representation regularly required mail and telephonic communications with Texas as well as the attorney's physical presence in meetings in Texas. More importantly, the attorney had appeared *pro hac vice* for Trinity in the Texas courts. Finally, the attorney billed Trinity in Texas and received payment from Trinity in Texas. The *Trinity* court concluded that in personam jurisdiction over the defendant existed in that case.

In *Wien Air Alaska v. Brandt*, 195 F.3d 208 (5th Cir.1999), the Fifth Circuit again considered the issue of personal jurisdiction in the context of the attorney-client relationship. In *Wien*, plaintiff Wien Air brought suit in Texas against its attorney, Gerald Brandt, a citizen of the Federal Republic of Germany, alleging fraud, fraudulent inducement, and breach of contract and fiduciary duties. The district court below had concluded that while Brandt had contact with Wien Air in Texas on several occasions, those acts related to and developed out of an ongoing relationship between the parties which was established in Germany. Accordingly, the district court held that Brandt had not purposefully availed himself of the benefits and protections of Texas law. The Fifth Circuit disagreed, noting that "even if the parties formed their relationship in Germany ... a single act by Brandt directed toward Texas that gives rise to a cause of action by Wien Air can support a finding of minimum contacts." *Id.* at 211. In that case the lawsuit arose out of fraudulent statements made by Brandt in letters sent to his client in Texas. It was this single act that allowed for the assertion of jurisdiction more so than the number or frequency of communications made between Brandt and Wien Air in Texas. *See id.* at 213.

In the First Circuit case of *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995), a resident of New Hampshire hired a Virginia attorney to prosecute a wrongful death claim in Florida. The New Hampshire resident sued the Virginia lawyer for legal malpractice in New Hampshire. The *Sawtelle* court held that the defendant was not subject to in personam jurisdiction because an attorney-client relationship without more does not confer jurisdiction. In particular the court held that written and telephone communications with the client in the state where they happened to live was not enough to confer jurisdiction.

In *Kaempe v. Myers,* 2001 WL 1397291 (S.D.Ind.2001), the district court held that in personam jurisdiction did not exist in Indiana over a Washington D.C. patent lawyer who was hired by an Indiana resident to prepare a patent application for an invention. The lawyer performed all legal work in Washington D.C., sent all bills to Illinois, and never traveled to Indiana regarding the patent. The lawyer made four or five telephone calls to Indiana as well as sending e-mails to his client there. Citing the *Trinity* case, the court noted that "an attorney-client relationship alone does not confer jurisdiction." The *Kaempe* court held that the communications with the Indiana client did not create a substantial connection with Indiana sufficient to justify the exercise of jurisdiction over the lawyer.

Finally, the Fifth Circuit opinion in *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773 (5th Cir.1986) though not involving an attorney-client relation, is instructive. In *Holt,* a Texas corporation brought suit in Texas against an Oklahoma oil and gas investor to recover an unpaid share of operating expenses under an operating agreement. Finding among other things that the material performance of the contract was to take place in Oklahoma, the court held that Texas could not assert jurisdiction. More importantly, the court noted that the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was insufficient to constitute purposeful availment because the communications to Texas rested on nothing more than the mere fortuity that Holt happened to be a resident of Texas. *Id.* at 778.

At the evidentiary hearing in the present case, the following evidence was introduced:

1. David Day, Jeffrey Relf, and Leslie Jackson were members of the WTMG LLC. The responsibility of managing the business was divided among the three. Day was responsible for legal matters, Relf was responsible for financial matters, and Jackson was responsible for the day to day affairs. Day and Relf resided in Houston, Texas. Leslie Jackson resided in New Orleans, Louisiana.

2. Plaintiff WTMG through its representative in Texas, David Day, contacted Carl Davis by telephone at his office in Atlanta, Georgia to solicit his legal services. Plaintiff retained Davis to patent its invention of a lighted bead necklace.

3. Davis never traveled to Louisiana to render legal services to WTMG or meet with plaintiff's representatives. All communication between Davis and the plaintiff and its representatives was carried out through letters, telephone calls, e-mails, and facsimiles. In fact, all of Davis's work was performed while he was in Atlanta.

4. Day was the primary contact for all of the legal matters involving WTMG.

5. All of Davis's billing statements, except for two, were sent to Day in Houston, Texas. All payments to Davis from WTMG were made from Houston, Texas.

6. Day would frequently, though not always, forward communications received from Davis to the other members of the company, including Jackson in Louisiana.

7. On one occasion, Day wrote Davis a letter informing that WTMG had obtained an agreement from Jackson to assign her rights to the invention to WTMG. Davis responded in a letter to Day memorializing his understanding that Day had obtained an assignment from Jackson.

8. When the rift between Jackson and the other members of WTMG developed, Davis assisted in arranging meetings between the parties so that the parties might resolve their problem. This involved making a few telephone calls to Jackson's attorney in Louisiana in an attempt to encourage the parties to meet and confer.

9. The defendant's law firm operates a website which contains a section titled "Ask Us." In this section, a visitor may request information by providing their name and other contact information. The web site is not used to accept instructions from clients, nor to establish an attorney-client relationship. Davis and no one at his law firm to his knowledge ever received any business from Louisiana through the web site.

10. Neither Davis nor his law firm derive any significant revenue from Louisiana.

11. In addition to WTMG, the defendant's law firm had only three other clients in Louisiana. The total number of hours spent in legal representation of these other Louisiana clients over a three year period was approximately 137.5 hours.

12. On one occasion a partner of the defendant's law firm traveled to Louisiana to review records held at the Louisiana Department of Environmental Quality. On one other occasion a partner of the defendant's law firm while on vacation in New Orleans, visited with a person who later became a client.

Plaintiff makes much of the fact that, from the moment that he was retained by WTMG, Davis anticipated that in the course of his representation he would have to make calls to the individual members of WTMG, including calls to Louisiana where Jackson was located. Furthermore, plaintiff emphasizes the fact that Davis knew that even though he would be communicating principally with Day in Houston, that Day in turn would relay all communications to the other WTMG members, including Jackson in New Orleans. In this way, plaintiff suggests that Davis had significant and intentional contacts with Louisiana both through his direct and indirect communications to Jackson in Louisiana.

Plaintiff's position does not stand scrutiny. First of all, many of the "contacts" which plaintiff points to, such as communications between Day in Houston and Jackson in New Orleans, are not contacts attributable to the defendant at all but merely the result of the unilateral activity of the plaintiff. As such they do not constitute the purposeful availment by the defendant of the protections and benefits of the laws of the State of Louisiana. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Even though Davis anticipated this indirect communication is not enough because foreseeability alone is not enough. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Indeed, all of the communications to Louisiana rest on nothing more than the mere fortuity that Jackson happened to be a resident of Louisiana. They would have been the same regardless of where she lived. Thus such communication can not be considered the purposeful availment by Davis of the privileges of conducting business in Louisiana. *See St. Martin & Mahoney v. Diversified Aircraft Holdings, Ltd.*, 934 F.Supp. 200, 203 n. 4, 204–05 (E.D.La.1996). Finally, as the *Holt* opinion teaches, the mere exchange of communications in the course of developing and

carrying out a contract, such as an attorney-client relationship, is insufficient to constitute purposeful availment. *Holt,* 801 F.2d at 778; *see also St. Martin & Mahoney,* 934 F.Supp. at 205; *Sawtelle v. Farrell,* 70 F.3d 1381 (1st Cir.1995); and *Kaempe v. Myers,* 2001 WL 1397291 (S.D.Ind.2001).

Considering the facts and circumstances revealed at the evidentiary hearing, the plaintiff fails to establish that the legal malpractice claim arises out of any purposeful contact between the defendants and State of Louisiana. Thus, the Court finds that specific jurisdiction over the defendants is lacking in this case.

■ Unlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind. The sole focus is on whether there are "continuous and systematic" contacts between the defendant and the forum. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. 1868. Due process requires that "continuous and systematic" contacts exist between the State and the defendant to exercise general personal jurisdiction because the forum state does not have an interest in the cause of action. *Helicopteros,* 466 U.S. at 415–16, 104 S.Ct. 1868.

In this case the facts do not indicate that the defendant had continuous and systematic contacts with the State of Louisiana. The defendant's law firm during the course of the representation was comprised of about five to seven lawyers all practicing in the area of intellectual property. Neither Davis nor his law firm derive any significant revenue from Louisiana. In addition to WTMG, the defendant's law firm had only three other clients in Louisiana. The total number of hours spent in legal representation of these other Louisiana clients over a three year period was approximately 137.5 hours. On one occasion a partner of the defendant's law firm trav-eled to Louisiana to review records held at the Louisiana Department of Environmental Quality. On one other occasion a partner of the defendant's law firm while on vacation in New Orleans, visited with a person who later became a client.

In light of these facts, the Court can not say that the contacts between the defendant and the State of Louisiana were continuous and systematic. *See generally, First Trust National Association v. Jones, Walker, Waechter, Poitevent, Carrere & Denegre,* 996 F.Supp. 585 (S.D.Miss.1998). Accordingly, the exercise of general jurisdiction over the defendants would not be proper.

### III. CONCLUSION

For the foregoing reasons,

IT IS ORDERED that the defendant's motion be and hereby is GRANTED. Accordingly, this action (01–1213) is DISMISSED WITHOUT PREJUDICE, each party to bear its own costs.