871 A.2d 120

RELIANCE NATIONAL INSURANCE COMPANY IN LIQUIDATION, PLAINTIFF–RESPONDENT, v. DANA TRANSPORT, INC., DEFENDANT/THIRD–PARTY, PLAINTIFF–RESPONDENT, v. THE LAW OFFICES OF COURTNEY WILDER STANTON, THIRD–PARTY DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 9, 2005—Decided April 20, 2005.

540

Before Judges WEFING, FALL and C.S. FISHER.

*Joseph M. Gaul, Jr.,* argued the cause for third-party defendant-appellant (*Gaul, Baratta & Rosello,* attorneys; *Mr. Gaul,* of counsel and on the brief).

*Edward A. Sturchio, Jr.,* argued the cause for defendant/third-party plaintiff-respondent (*McCusker, Anselmi, Rosen, Carvelli & Walsh,* attorneys; *Bruce S. Rosen,* of counsel and on the brief; *Mr. Sturchio,* on the brief).

Plaintiff-respondent Reliance National Insurance Company in Liquidation did not participate in this appeal.

The opinion of the court was delivered by

WEFING, P.J.A.D.

The trial court concluded that third-party defendant The Law Offices of Courtney Wilder Stanton, a Florida law firm, was subject to jurisdiction in New Jersey as a result of its representa-

tion in a Florida subrogation action of an insured which had its principal place of business in New Jersey. The trial court therefore denied the firm's motion to dismiss the third-party complaint for lack of personal jurisdiction. We granted Stanton's motion for leave to appeal from the trial court's order. After reviewing the record in light of the contentions advanced on appeal, we reverse.

Dana Transport, Inc. (Dana) is in the business of providing trucking and cargo transportation services. Its principal place of business is located in Avenel, New Jersey, but it also has a terminal located in Jacksonville, Florida. Dana was insured by Reliance National Insurance Company (Reliance), an entity that is now in liquidation.

In February 1997 Dana shipped a tank trailer from Augusta, Georgia to its Jacksonville terminal. It then placed the tank trailer, filled with nitric acid, aboard a barge owned and operated by Crowley American Transport for shipment to San Juan, Puerto Rico. During the voyage to Puerto Rico, nitric acid leaked from Dana's tank trailer, damaging Crowley's barge.

Dana paid Crowley approximately $195,000 for the damage to its barge. Reliance, after subtracting Dana's deductible, reimbursed Dana and then sought to file a subrogation action against Universal Petroleum Services, a company which had inspected the tank trailer prior to its placement on Crowley's barge.

Courtney Wilder Stanton is the principal of The Law Offices of Courtney Wilder Stanton. He is a Florida resident and is admitted to the practice of law in Florida and in Georgia. He has been certified as a specialist in admiralty and maritime law. His law office is located in Jacksonville, the same city in which Dana maintains its Florida terminal. In mid–1998 Stanton was contacted by Crawford and Company, a national insurance adjusting firm, which inquired whether his firm would be interested in handling a subrogation action on behalf of Reliance and Dana against Universal. After determining that neither he nor his firm had a disqualifying conflict of interest, Stanton agreed to undertake the matter. He was told to await further instructions.

Eventually, Stanton received clearance from Crawford to proceed, and he filed an action captioned *Dana Transport, Inc. v. Universal Petroleum Services, Inc.* in the Fourth Judicial Circuit Court of Florida in Duval County. In order to prevail in this action, Stanton had to prove that Universal was negligent in its inspection of the tank trailer, that it either knew or should have known that Dana's tank trailer was carrying nitric acid and, thus, that the lids on the tank trailer should have been sealed with something other than the rubber gaskets that were used. Stanton required the production of various records from Dana in order to establish this proposition.

Crawford's files listed the manager at Dana's Jacksonville terminal as the contact person, but Stanton's initial calls to Dana's Jacksonville terminal were unsuccessful in obtaining any information. Stanton said that he finally received a telephone call from Ron Dana who told him to stop contacting the Florida terminal and deal only with Ron Billik, Dana's general manager, who was located in New Jersey. According to Stanton, Dana failed to cooperate with him, to the point of not answering his telephone calls or letters. Eventually, based on that lack of cooperation, Stanton sought and obtained permission from the Florida court to withdraw as Dana's attorney. Thereafter, Universal successfully filed a motion to dismiss the subrogation suit.

In June 2003 Reliance began suit in New Jersey against Dana, contending that its conduct in connection with the Florida suit was a breach of its contractual duty to cooperate. Dana, in turn, filed a third-party action against Stanton, alleging negligence on its part in connection with its representation of Dana in the subrogation action; it also asserted claims for contribution and indemnification. Stanton did not file an answer to this third-party complaint; rather, it filed a motion to dismiss for lack of jurisdiction. *R.* 4:6–2(b).

Accompanying this motion was Stanton's affidavit in which he set forth that he has never been licensed to practice law in New Jersey, nor has any attorney he has ever employed. Indeed, he

has never employed an attorney or a legal assistant who has ever lived in New Jersey. He has no office in New Jersey and has never owned any property in New Jersey. He has never sought to obtain legal business from the New Jersey market. He has not solicited business from New Jersey nor has he sought to develop referrals in New Jersey. His firm's representation of Dana in connection with the Florida subrogation action was the only time it had ever represented a corporation headquartered in New Jersey.

The trial court denied Stanton's motion. It concluded that New Jersey had a sufficient interest in the litigation and that the contacts Stanton had with Dana's New Jersey site in an effort to obtain information relative to the Florida litigation made it not unreasonable for New Jersey to exercise jurisdiction over Stanton.

## I

New Jersey's only limitation upon the exercise of long-arm jurisdiction over a non-resident defendant is that it be "consistent with due process of law." *R.* 4:4–4(b)(1).

> Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."
>
> [*Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 322, 558 *A.*2d 1252 (1989) (quoting *Int'l. Shoe Co. v. Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L.Ed.* 95, 102 (1945)).]

New Jersey exercises such jurisdiction to the outermost limit of its ability to do so. *Avdel Corp. v. Mecure,* 58 *N.J.* 264, 268, 277 *A.*2d 207 (1971); *Dave's Trash Removal v. Charm City Equip. Corp.,* 214 *N.J.Super.* 497, 500, 520 *A.*2d 415 (App.Div.1987).

*Lebel, supra,* illustrates this principle. Plaintiff, a New Jersey resident, purchased a 38–foot Cigarette racing boat from defendant, a Florida dealer. 115 *N.J.* at 320, 558 *A.*2d 1252. Plaintiff met a representative of defendant at a boat show held in New York City and, for the next two years, received telephone calls in New Jersey about purchasing a boat to be used in New Jersey. *Ibid.* Defendant forwarded to plaintiff in New Jersey a sales

agreement, which he executed and returned to Florida. *Ibid.* In 1986, the boat was delivered in Florida and registered in Florida. *Ibid.* An accident occurred while the boat was being transported to New Jersey, in which it suffered significant damage. *Ibid.* During the process of negotiating his damage claims, plaintiff learned that defendant may have defrauded him in connection with the original purchase, and he filed suit against defendant in New Jersey. *Id.* at 320–21, 558 *A*.2d 1252. Defendant sought to dismiss the suit, saying it was not subject to jurisdiction in New Jersey. *Id.* at 321, 558 *A*.2d 1252. Despite the fact that defendant had done no more than place telephone calls and mail correspondence to New Jersey, and that the boat never even reached this state, the Supreme Court ultimately rejected defendant's argument and found it was subject to jurisdiction in this state. *Id.* at 329, 558 *A*.2d 1252.

A

■ Determining whether a non-resident defendant is subject to our jurisdiction requires a two-pronged analysis: first, an examination of the nature of the contacts defendant has had with New Jersey and then a consideration whether the exercise of jurisdiction comports with "fair play and substantial justice," i.e., is it reasonable in the overall context of the matter. *Lebel, supra,* 115 *N.J.* at 328, 558 *A*.2d 1252. We are satisfied that New Jersey does not have personal jurisdiction over Stanton under either of these prongs.

■ The analysis and determination whether a defendant's contacts with New Jersey are sufficient to support in personam jurisdiction depends upon

> whether general or specific jurisdiction is asserted, that is, whether the defendant is subject to any claim that may be brought against him in the forum state whether or not related to or arising out of the contacts themselves, i.e., general jurisdiction, or whether the claim is related to or arises out of the contacts in the forum, i.e., specific jurisdiction. Clearly, a lesser standard is required to sustain the exercise of specific jurisdiction....
>
> [*Citibank, N.A. v. Estate of Simpson,* 290 *N.J.Super.* 519, 526–27, 676 *A*.2d 172 (App.Div.1996).]

■ In the case of general personal jurisdiction, a state may exercise jurisdiction over a non-resident defendant who has "continuous and systematic" contacts with the state even if the nature of the claim is not related to those contacts. *Lebel, supra,* 115 *N.J.* at 323, 558 *A.*2d 1252. Here, the claim is that New Jersey has specific personal jurisdiction over Stanton, because Dana's allegation of negligence "relates directly" to Stanton's contacts. *Id.* at 322, 558 *A.*2d 1252. There is no assertion that Stanton has continuous and systematic contacts with New Jersey.

■ The Court in *Lebel* summarized the principles underlying a determination whether a non-resident defendant is subject to specific personal jurisdiction.

> In the context of specific jurisdiction, the minimum contacts inquiry must focus on the relationship among the defendant, the forum and the litigation. The "minimum contacts" requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff.
>
> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. The question is whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.
>
> [*Id.* at 323–24, 558 *A.*2d 1252. (citations omitted).]

Considering whether a defendant has had sufficient contacts with the forum state requires a fact-sensitive analysis. *Burger King Corp. v. Rudzewicz,* 471 *U.S.* 462, 485–86, 105 *S.Ct.* 2174, 2189, 85 *L.Ed.*2d 528, 549 (in which the Court "reject[ed] any talismanic jurisdictional formulas; the facts of each case must always be weighed in determining whether personal jurisdiction would comport with fair play and substantial justice"). Such a fact-sensitive analysis is particularly necessary when a party attempts to assert jurisdiction over a non-resident attorney based upon allegedly deficient legal services rendered to that party in another forum. *See,* Dave R. Bonelli, Annotation, *In Personam Jurisdiction, Under Long–Arm Statute, over Nonresident Attorney in Legal Malpractice Action,* 23 *A.L.R.4th* 1044.

In the face of Stanton's assertion that New Jersey lacked personal jurisdiction over it, the burden rested upon Dana to establish such jurisdiction. *Carteret Sav. Bank, F.A. v. Shushan,* 954 *F.*2d 141, 146 (3d Cir.1992); *Wartsila NSD North America v. Hill Intern., Inc.,* 269 *F.Supp.*2d 547 (D.N.J.2003); *Citibank v. Simpson, supra,* 290 *N.J.Super.* at 533, 676 *A.*2d 172.

This court has addressed the question twice in reported opinions, *Citibank v. Simpson, supra,* and *Washington v. Magazzu,* 216 *N.J.Super.* 23, 522 *A.*2d 1013 (1987). In *Citibank,* the plaintiff bank was attempting to collect the balance due for funds it had advanced in connection with the purchase of certain New York real estate pursuant to the terms of a private placement memorandum. 290 *N.J.Super.* at 524, 676 *A.*2d 172. Defendant, in turn, filed third-party complaints against various parties involved in the transaction, including the attorneys. *Id.* at 524–25, 676 *A.*2d 172. None of the third-party defendants resided, did business, or "ha[d] an ascertainable presence in New Jersey." *Id.* at 526, 676 *A.*2d 172. The trial court denied their motion to dismiss for lack of personal jurisdiction, and we granted leave to appeal. *Id.* at 524, 676 *A.*2d 172. We reversed the trial court's order and remanded for further proceedings because the trial court had ruled on the motion without deciding the contested factual assertions of the parties with regard to the nature of the contacts the movants had with New Jersey. *Ibid.*

In *Washington, supra,* the plaintiffs sued defendant Magazzu, a New Jersey attorney, and John Wicker, a Virginia attorney, for legal malpractice in connection with a medical malpractice action the plaintiffs wished to pursue in Virginia relating to the death of their daughter in a Virginia hospital. 216 *N.J.Super.* at 25, 522 *A.*2d 1013. On appeal, although we considered Wicker's course of correspondence with New Jersey counsel to constitute sufficient contacts, we reversed the trial court's order denying Wicker's motion to dismiss for lack of personal jurisdiction. *Id.* at 28, 522 *A.*2d 1013. We noted that "[t]he fact that a nonresident lawyer's alleged malpractice affected clients who happen to live in the

forum state has not been considered a dominant jurisdictional factor." *Id.* at 29, 522 *A.*2d 1013.

The federal courts have also had occasion to consider the question. In *Carteret Savings, supra,* the court found personal jurisdiction in New Jersey over Louisiana attorneys who had acted as local counsel for the bank in connection with a Louisiana real estate transaction. 954 *F.*2d at 142. Critical to the court's analysis, however, was the allegation that the attorney in question traveled to New Jersey to meet with his client, Carteret, about the loan documents and during the course of that meeting fraudulently concealed from the bank certain crucial modifications he had made, as well as the fact that he had a prior professional relationship with another party involved in the transaction who happened to benefit from those modifications. *Id.* at 147.

In *Wartsila, supra,* the plaintiff sued defendant Hill in New Jersey for damages when an individual Hill had assigned as a senior consultant on a construction project in El Salvador had falsified his credentials and later committed perjury in the course of an arbitration proceeding between Wartsila and a subcontractor. 269 *F.Supp.*2d at 549–51. As a result of that false testimony, Wartsila did not prevail in the arbitration. *Ibid.* Hill then filed a third-party complaint against two Louisiana attorneys and their firm for their negligence in representing Wartsila in connection with that arbitration, including failing to investigate and verify the credentials of the person put forth as the chief witness in the arbitration. *Id.* at 551. The attorneys moved to dismiss for lack of personal jurisdiction, a motion the court denied. *Id.* at 561.

In the course of its opinion, the court noted that the two individual attorneys had had substantial involvement in the litigation, even to the extent of seeking admission in New Jersey pro hac vice, to appear on plaintiff's behalf. *Id.* at 554, 557. In addition, the firm had represented a number of clients doing business in New Jersey; its attorneys had conducted depositions in New Jersey and met in New Jersey with their clients. 269

*F.Supp.*2d at 559. By way of contrast, the record here discloses no such activity on Stanton's part.

We consider this matter closely analogous to *Sawtelle v. Farrell,* 70 *F.*3d 1381 (1st Cir.1995). The plaintiffs in that case lived in New Hampshire and wished to file a wrongful death action following the death of their son when a plane in which he was a student pilot crashed on the New Hampshire–Vermont border after it was struck by a Florida-based airplane. 70 *F.*3d at 1386. They retained a California firm to prosecute the action, and the firm assigned the file to defendant Farrell, an attorney in the firm's Washington, D.C. office. *Ibid.* Farrell advised the plaintiffs that it would be advantageous to file suit in Florida, and he engaged local counsel in Florida. *Ibid.* The plaintiffs, acting on the advice of Farrell and Florida counsel, reluctantly accepted an offer of $155,000 to settle their suit. *Id.* at 1386–87. Later, they learned that the wrongful death suit of the instructor in the plane, which had been consolidated with their claim, had been settled for $500,000. *Id.* at 1387. They then brought suit in New Hampshire against Farrell, his firm, and Florida counsel, alleging they had negligently negotiated an inadequate settlement. *Ibid.* The trial court granted the defendants' motion to dismiss for lack of personal jurisdiction, and the Court of Appeals affirmed, noting that defendants' only activities in New Hampshire were a letter and a telephone call to plaintiffs recommending the settlement while the remainder of defendants' activities occurred in Washington, D.C. and in Florida. *Id.* at 1396. The court considered it

> illogical to conclude that those isolated recommendations constituted the negligent conduct that caused the Florida injury and thus were in-forum acts sufficient to establish specific personal jurisdiction....
>
> [70 *F.*3d at 1390.]

The court was also satisfied that defendants' agreement to represent the plaintiffs, knowing they were New Hampshire residents, could not be considered a purposeful availment of doing business in New Hampshire. *Id.* at 1391–94. According to the court, "[t]he mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does

not confer personal jurisdiction over the non-resident in the forum; more is required." *Id.* at 1392.[1]

Other courts have reached a similar conclusion. *Pyle v. Hatley,* 239 *F.Supp.*2d 970 (C.D.Cal.2002) (a Nevada attorney who had represented plaintiff in two matters in Nevada was not subject to suit in California over plaintiff's visitation and custody rights); *We're Talkin' Mardi Gras, LLC v. Davis,* 192 *F.Supp.*2d 635 (E.D.La.2002) (Georgia patent attorney, who was retained by two partners of the plaintiff company that resided in Texas and who performed all his work in Atlanta, not subject to suit in Louisiana for alleged negligent advice); *Porter v. Berall,* 142 *F.Supp.*2d 1145 (W.D.Mo.2001) (Connecticut attorneys who performed all their work in Connecticut not subject to suit in Missouri for alleged negligence in drafting trust documents and failing to disclose a tax problem).

We are satisfied that the record here does not disclose such purposeful activity on the part of Stanton that the firm should reasonably have anticipated being sued in New Jersey. Stanton, a Florida firm, was retained to prosecute a subrogation action in the State of Florida for losses incurred following a shipment by an entity doing business in Florida from a Florida terminal. According to the record before us, Stanton was not even aware that Dana had a New Jersey location until after it had agreed to handle the Florida subrogation action. Stanton did not affirmatively reach out to Dana in New Jersey; rather, it was Dana who instructed Stanton not to deal with its employees at its Florida terminal, but only with its New Jersey personnel.

We cannot equate Stanton's compliance with that directive to constitute "purposeful availment" of the benefits and protections

---

[1] *See Comment, Summer Bennett Joseph, Drowning Professionals in the Stream of Commerce: An Examination of Purposeful Availment in the Professional Liability Context,* 53 *Emory L.J.* 277, 295 (2004), noting that purposeful availment "requires something more" in professional liability actions than in product liability actions.

of conducting activities in New Jersey. *Asahi Metal Industry Co. v. Superior Court*, 480 *U.S.* 102, 112, 107 *S.Ct.* 1026, 1032, 94 *L.Ed.*2d 92, 104 (1987) ("The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.") Here, however, it was Dana's "unilateral activities" which led to Stanton's telephone calls to New Jersey, not any effort on Stanton's behalf to enter the New Jersey market, to have an economic impact in this State, or to receive any economic benefit in this State. *Lebel, supra*, 115 *N.J.* at 324, 558 *A.*2d 1252 (noting that the Court was not dealing with "a situation in which the plaintiff unilaterally brought about the contacts.") If Dana's personnel working at the Jacksonville terminal had responded to Stanton's inquiries, Stanton may never have had any contact with New Jersey of any sort.

## B

Ordinarily, a conclusion that Stanton lacked sufficient minimum contacts with New Jersey to be subject to the jurisdiction of our courts would conclude the matter. For purposes of completeness, however, we turn to the second prong of the analysis, whether it would "offend traditional notions of fair play and substantial justice" to subject Stanton to the jurisdiction of our courts. It was this second prong which led to the dismissal of plaintiffs' claim against their Virginia attorney in *Washington, supra*. A party who seeks to defeat forum jurisdiction in the light of having purposefully directed activities at forum residents "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King, supra*, 471 *U.S.* at 477, 105 *S.Ct.* at 2185, 85 *L. Ed.*2d at 544.

The factors to be considered include:

The burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

[*Id.,* 471 *U.S.* at 477, 105 *S.Ct.* at 2184, 85 *L. Ed.*2d at 543.]

An examination of these factors leads us to conclude that it would be unreasonable to require Stanton to submit to jurisdiction in New Jersey. We note first that the physical distance separating Stanton from New Jersey does not, by itself, warrant a conclusion of undue burden. *Lebel, supra,* 115 *N.J.* at 329, 558 *A.*2d 1252 (noting "[a] trip from Fort Lauderdale to Newark Airport is not qualitatively that different from one from Fort Lauderdale to Tallahassee.")

The remaining factors, however, all combine to lead to the conclusion that New Jersey does not have personal jurisdiction over Stanton in the context of this dispute. New Jersey has no interest in adjudicating whether a Florida law firm was negligent in the manner in which it handled a Florida lawsuit. While Dana concededly has an interest in "convenient and effective relief," that interest may as readily be achieved in Florida, where Dana maintains a terminal and actively conducts business, as in New Jersey. Dana, having decided to conduct business in Florida, is fully able to vindicate its interests by litigating its disputes in that forum. Florida, in contrast, has a particular interest in adjudicating whether a Florida law firm was negligent in connection with litigation that firm conducted in Florida's courts. *Washington v. Magazzu, supra,* 216 *N.J.Super.* at 29, 522 *A.*2d 1013. And, while both Florida and New Jersey may have a shared interest in assuring that clients are not harmed by attorney negligence, the most efficient resolution of the dispute between Dana and Stanton can be achieved in Florida.

Finally, we reject Dana's remaining contention, that rather than reversing the trial court order, we remand the matter to the trial court for discovery and an evidentiary hearing. While such a remedy may be appropriate in the face of conflicting factual assertions, *Citibank, supra,* the parties here only dispute the legal significance of the facts, not the facts themselves.

For the reasons stated, we reverse the trial court's order and remand this matter to the trial court for entry of an order

dismissing Dana's third-party complaint for lack of personal jurisdiction.