# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3462-18T4

D.C.,

       Plaintiff-Respondent,

v.

E.C.,

       Defendant-Appellant.

_____

       Submitted May 11, 2020 – Decided June 3, 2020

       Before Judges Sabatino and Natali.

       On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1223-18.

       Fusco & Macaluso Partners, LLC, attorneys for appellant (Amie E. DiCola, on the brief).

       Winne Banta Basralian & Kahn, PC, attorneys for respondent (Thomas R. McConnell, on the brief).

PER CURIAM

Defendant E.C.[1] appeals from a February 27, 2019 amended final restraining order (FRO) entered in favor of plaintiff D.C. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Specifically, defendant challenges that portion of the amended order that memorialized the court's ruling denying his application to dissolve the FRO under Rule 4:50-1(d) and (e). The sole issue raised on appeal is whether the trial court had personal jurisdiction over defendant sufficient to grant a FRO.

For the reasons that follow, we vacate the FRO and remand for further proceedings with respect to the jurisdictional issues. As detailed in our opinion, however, it is clear that the trial court had subject matter jurisdiction and the authority to issue a temporary order to protect plaintiff from defendant's acts of domestic violence in accordance with Shah v. Shah, 184 N.J. 125 (2005), and N.J.S.A. 2C:25-28(a) because plaintiff fled from Arizona to New Jersey to escape defendant's domestic violence. Well-established New Jersey law also permitted the trial court to address custody and visitation issues related to the parties' minor son.

---

[1] We use initials to protect the privacy of the domestic violence victim. R. 1:38-3(d)(10).

A-3462-18T4

The following facts are derived from the record. Both plaintiff and defendant lived in New Jersey where they started dating. On August 30, 2014, the parties' son was born. Three months later, in November 2014, they moved to Las Vegas, Nevada, where they married. The parties then relocated to Arizona where all of the acts of domestic violence that became subject of an Arizona order of protection and the New Jersey FRO occurred. At the time of the trial court proceedings, it appears that defendant remained a resident of Arizona.[2]

According to the allegations contained in plaintiff's January 2, 2018 domestic violence complaint, a year earlier, during an argument, defendant choked plaintiff from behind while telling her to "die bitch." He then pushed plaintiff to the ground where he repeatedly punched her in the head causing numerous injuries. The next day, on January 3, 2017, defendant yelled at their son and when plaintiff attempted to intervene, defendant told plaintiff "he is the father and man of the house," and that plaintiff should "not tell him what to do." He proceeded to "cock[] his fist back at plaintiff and told [her] if she does not

---

[2] The address for defendant in the TRO and amended FRO listed different Arizona addresses.

listen, she will get what she deserves," and to "shut the hell up." Plaintiff also contended that on January 6, 2017 plaintiff was granted a restraining order in Arizona and defendant was arrested the next day for domestic violence and she was issued a no contact order.

Plaintiff also recited a significant history of domestic violence between the parties, including an incident in 2016 when "during an argument, def[endant] pointed a . . . gun loaded with hollow point bullets at [her]." Because defendant's finger was on the trigger, plaintiff reached for the gun. Defendant proceeded to punch plaintiff in the nose causing swelling that lasted two days. Based on the dates of the other incidents alleged by plaintiff, it appears that defendant engaged in prior acts of domestic violence directed toward plaintiff while the parties lived in Nevada and New Jersey.

Plaintiff was issued a TRO on January 2, 2018, which awarded temporary custody of the parties' son to plaintiff and prevented defendant from contacting plaintiff and their son. The court also scheduled a FRO hearing on February 12, 2018. Defendant did not appear at the FRO hearing and after concluding he was properly served with the TRO and had notice of the proceedings, the court conducted the proceeding where plaintiff was the sole witness.

Plaintiff testified that the restraining order issued in Arizona had recently expired on January 6, 2018. With respect to the jurisdictional issues, plaintiff stated that defendant's parents still lived in New Jersey. Plaintiff explained that she and defendant initially lived together in New Jersey, had a son, and "moved out to the west coast when [their] son was [three] months old." With respect to defendant's history of domestic violence, plaintiff confirmed that prior acts of domestic violence occurred in New Jersey.

The court initially concluded that it had personal jurisdiction over defendant sufficient to issue a FRO. Specifically, the court found:

> The defendant grew up in Fairfield. Defendant and plaintiff lived in New Jersey for two years together, [and] moved from New Jersey in 2014. Defendant's family is still in New Jersey, and there have been prior acts of domestic violence in New Jersey. So[,] this is not a [Shah, 184 N.J. at 125,] long-arm extended jurisdiction situation. I'm finding the Court does have jurisdiction to enter a final restraining order.

Plaintiff then testified regarding the predicate acts of domestic violence referenced in her complaint, all of which took place in Arizona, as well as some of the prior history of domestic violence. Specifically, plaintiff stated that during the January 2017 argument when defendant cocked his fist back at plaintiff, he also told defendant told she was never going to leave him, and he

would kill her and their son and "chop up [their] body pieces and spread them out in the backyard, and no one's ever going to know that you're alive."

According to plaintiff, the next day, while defendant was at a job interview, she packed her belongings and left with her son for New Jersey. As to the prior acts of domestic violence, plaintiff specifically testified to the incident in December 2016 when defendant pointed a gun at her and punched her in the nose. She also stated she remains scared of defendant.

At the conclusion of the hearing, the court found that jurisdiction and venue was proper in New Jersey, in part, because plaintiff had fled Arizona "where the act of domestic violence took place and sheltered in . . . Bergen County . . . ." See N.J.S.A. 2C:25-28(a). As noted, the court also concluded it had personal jurisdiction over defendant.

With regard to the substance of the plenary hearing, after applying the two-part test detailed in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the court found plaintiff's testimony to be credible and concluded that plaintiff had established by a preponderance of the evidence that defendant committed the predicate acts of assault under N.J.S.A. 2C:12-1 and harassment in violation of N.J.S.A. 2C:33-4. The court also found that plaintiff was in need of the protection of a restraining order to protect her from immediate danger and

A-3462-18T4

further abuse, and the court accordingly entered the FRO which, in addition to prohibiting defendant from contacting plaintiff, continued temporary custody of the parties' son with plaintiff and prohibited defendant's contact with him. The FRO also imposed a $100 civil penalty on defendant and prohibited him from possessing any firearms or other weapons.

Approximately eleven months later, defendant filed a motion to vacate the final restraining order under Rule 4:50-1(d) and (e). According to defendant's certification, he continued to reside in Arizona where, at the time of his motion, the parties were engaged in divorce proceedings. He maintained that plaintiff had the protection of the Arizona restraining and no contact orders, which he alleged could have been extended and to which he has fully complied. He accused plaintiff of fleeing to New Jersey and filing a domestic violence complaint in an attempt to continue to thwart his contact with their son.

He also explained his non-appearance at the FRO hearing because he was facing criminal charges in Arizona and could not leave the state. He noted that all of the acts testified by plaintiff and which supported the assault and harassment predicate acts took place in Arizona. As to his contacts with New Jersey since 2014, plaintiff provided no affirmative statements, instead stating that at the hearing "plaintiff was unable to articulate whether I had ever returned

to [New Jersey] since 2014." He also certified that he requested his counsel file the motion to vacate as soon as he discovered the FRO was improperly granted. Plaintiff opposed the motion and filed a cross-motion seeking attorney's fees.

After hearing oral arguments, the court denied defendant' motion to vacate and granted plaintiff $2,000 in attorney's fees. In its oral decision, the court rejected defendant's claims of excusable neglect for failing to appear at the FRO hearing. The court explained that defendant could have contacted a New Jersey attorney or appeared telephonically if he could not leave Arizona. With respect to its finding that the court possessed personal jurisdiction over defendant, the court acknowledged that plaintiff did not specifically detail in her testimony any of the prior acts of domestic violence that occurred in New Jersey, but "that was just one aspect of what I found and not the controlling aspect of my finding regarding minimum contact(s)."

On appeal, defendant does not appear to contest the trial court's factual findings regarding the domestic violence and the need for an order to protect plaintiff. Nor does defendant contest the court's invocation of subject matter jurisdiction with respect to the domestic violence incidents. Rather, the sole issue raised by defendant on appeal is the court's lack of personal jurisdiction

over him such that it was without authority to issue a FRO that included affirmative relief.

According to defendant, after the issuance of the FRO, an Arizona court issued a Decree of Dissolution of the parties' marriage. In addition to dissolving the marriage, and finding defendant engaged in acts of domestic violence, the court also established a parenting time schedule for the parties' son. The order also stated, however, that "in the event a valid New Jersey protective order is in effect, this [r]uling does not abrogate that order and the parties are expected to confirm their actions accordingly." Defendant interprets this provision as conditioning visitation with his son on the New Jersey FRO, which effectively suspended his parenting time. He further contends that because he has appealed the FRO, the trial court is without jurisdiction to amend or modify its order. We note, however, that at no time did defendant move before the New Jersey court to modify the parenting time provisions of the FRO nor did he seek a limited remand for that purpose.

## II.

To address the limited issue presented to us, we first consider the relevant legal principles and the applicable standard of review.

A-3462-18T4

We review a court's determination under Rule 4:50-1 for an abuse of discretion. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994). Rule 4:50-1 provides in relevant part that "the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (d) the judgment or order is void; [or] (e) . . . it is no longer equitable that the judgment or order should have prospective application . . . ." "The rule is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." U.S. Nat'l Bank Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (citation and internal quotation marks omitted).

A motion to vacate a judgment that "is void and, therefore, unenforceable . . . is a particularly worthy candidate for relief (R. 4:50-1(d)) provided that the time lapse [between the entry of the judgment and the motion to vacate the judgment] is not unreasonable and an innocent third party's rights have not intervened." Bank v. Kim, 361 N.J. Super. 331, 336 (App. Div. 2003) (citing Berger v. Paterson Veterans Taxi Serv., 244 N.J. Super. 200, 205 (App. Div. 1990); Coryell, L.L.C. v. Curry, 391 N.J. Super. 72, 80 (App. Div. 2006). All doubt should be resolved in favor of the party seeking relief. Arrow Mfg. Co. v. Levinson, 231 N.J. Super. 527, 534 (App. Div. 1989).

As we recently noted in Egg Harbor Care Center v. Scheraldi, "'We review the [trial] court's factual findings with respect to jurisdiction to determine whether they were supported by substantial, credible evidence' in the record." 455 N.J. Super. 343, 351 (2018) (quoting Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007). Further, "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]' and, as such, our review of a trial judge's legal conclusions surrounding personal jurisdiction is plenary." Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995)).

"The 'Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants.'" Ibid. (quoting Kulko v. Super. Ct. of Cal., 436 U.S. 84, 91 (1978)). "[A] valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." Ibid. (quoting Kulko, 436 U.S. at 91); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

New Jersey courts "may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'" Bayway Refining Co. v. State Utilities, Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) (quoting R. 4:4-4(b)(1)). Our analysis is governed by a two-part test:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, [(1)] he have certain minimum contacts with it [(2)] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.
>
> [Egg Harbor Care Center, 455 N.J. Super. at 351 (quoting Int'l Shoe v. Wash., 326 U.S. 310, 316 (1945)) (internal quotations and citation omitted).]

These principles apply to matrimonial litigation in which a plaintiff seeks to impose affirmative duties on a defendant. Katz v. Katz, 310 N.J. Super. 25, 31 (App. Div. 1998) ("These jurisdictional fundamentals are, moreover, fully applicable in matrimonial litigation."). The United States Supreme Court has recognized that applying minimum contacts principles to matrimonial litigation is a fact-sensitive endeavor. Kulko, 436 U.S. at 92. Also, the plaintiff bears the burden to prove that the defendant had sufficient contacts to warrant exercise of personal jurisdiction. Citibank v. Estate of Simpson, 290 N.J. Super. 519, 533 (App. Div. 1996).

To the extent defendant's appeal seeks relief from any of the protective provisions of the FRO, we reject such a request. In Shah, the Supreme Court addressed a situation addressing similar jurisdictional issues under the PDVA with respect to a victim of domestic violence who sought refuge in New Jersey. In that case, the defendant was accused of committing domestic violence in another state and had no contacts with New Jersey. The Court held that in such circumstances, the Family Part had limited jurisdiction to entertain a domestic violence FRO against an out of state defendant against whom the court could not establish personal jurisdiction. Although a New Jersey court could not issue a FRO compelling affirmative relief against the defendant, and which resulted in "severe collateral consequences," Shah, 184 N.J. at 140, the Shah Court concluded the Family Part was empowered to enter a temporary restraining order with prohibitory provisions, which could remain in effect indefinitely. Id. at 128-29, 143 (affirming that "[a]n order for emergency, ex parte relief . . . shall remain in effect until a judge of the Family Part issues a further order." (quoting N.J.S.A. 2C:25-28(i))).

Here, in addition to the prohibitory acts, the FRO also fined defendant $100 and precluded his possession of firearms. These provisions are identical

to those at issue in <u>Shah</u> and which the court concluded cannot issue without personal jurisdiction over defendant.

With respect to personal jurisdiction, plaintiff did not allege, nor did she testify, to any other contact that defendant had with the State of New Jersey after 2014. We are not confronted with a situation on the current record, like that in <u>A.R. v. M.R.</u>, 351 N.J. Super. 512, 519-20 (App. Div. 2002), where an out of state defendant made several threatening phone calls to plaintiff after she had returned to New Jersey. <u>See also</u> <u>State v. Reyes</u>, 172 N.J. 154, 156-57 (2002) (New Jersey court had both subject matter and personal jurisdiction over a defendant who committed domestic violence in another state and then pursued the victim to New Jersey). Nor can we conclude that the fact that defendant had family members in New Jersey supports invoking personal jurisdiction over him based on such relationship status. <u>See</u> <u>Egg Harbor</u>, 455 N.J. Super at 353-54 (a nonresident defendant's interactions with his mother's in-state health care facility, and his attempt to secure her Medicaid benefits, did not confer personal jurisdiction when he had no contractual relationship with the plaintiff, did not

reside in the state, and lacked a physical presence for an extended period of time in the state).[3]

Further, the prior contacts that the court did rely upon – the pre-2014 residence of the parties and dating history are insufficiently current to conclude the court had personal jurisdiction for the allegations in the PDVA complaint, which indisputably involved acts in Arizona. We acknowledge that plaintiff alleged that certain prior acts of domestic violence occurred in New Jersey. The testimony regarding those events, however, was cursory and while the court generally acknowledged plaintiff's testimony in its factual findings, it cited a specific prior act of domestic violence that occurred in Arizona when assessing the Silver factors. Further, in its oral decision denying defendant's motion to vacate, the court appeared to limit its reliance on any prior act of domestic violence in New Jersey to support its personal jurisdiction ruling.

---

[3] We note that for the first time on appeal plaintiff appears to maintain that defendant waived personal jurisdiction. Defendant, however, filed a motion to vacate the FRO, pursuant to Rule 4:50-1(d), contending that it was void because the court lacked personal jurisdiction over him. Though a party may consent to jurisdiction by participating in the proceeding, Battle v. Gen. Cellulose Co., 23 N.J. 538, 546 (1957), that is not what happened here. See Field v. Field, 31 N.J. Super. 139, 148 (App. Div. 1954) ("[A]n appearance for any other purpose [than to contest jurisdiction], at least one bearing substantial relation to the cause [of action,] waives objections to the jurisdiction over the person of the defendant.") As defendant's motion was principally based on contesting jurisdiction, we conclude he did not waive personal jurisdiction under these circumstances.

We are not satisfied, however, that the record adequately addresses the contacts between defendant and New Jersey after 2014. In this regard, we note counsel's comments regarding allegations of intimidation that defendant allegedly made toward plaintiff prior to the hearing on defendant's motion to vacate. Although the court did not address the merits of those allegations, such actions, if true, would certainly support personal jurisdiction over defendant. See A.R., 351 N.J. Super. at 519-20 (New Jersey court had jurisdiction to enter final restraining order against a defendant who committed domestic violence in another state because the parties had lived in New Jersey and because the defendant made threatening telephone calls to the plaintiff in New Jersey, where she had fled); see also Reyes, 172 N.J. at 156-57 (conferring personal jurisdiction over a defendant who committed domestic violence in another state and subsequently pursued the victim to New Jersey). Further, as noted, in his certification that accompanied his application to vacate the FRO, defendant did not deny any contacts with New Jersey after 2014, simply stating that at the time of the FRO hearing, "[p]laintiff and [him] were married . . . and we are still married but separated, with a pending divorce matter in Arizona Superior Court . . . ." In light of the significant issues surrounding the issuance of a FRO, and the lack of clarity in the record regarding the contacts that defendant may or may

16

not have had with the State of New Jersey that would affect a minimum contacts analysis, we conclude a remand is appropriate for the court to issue more detailed factual findings regarding the jurisdictional issue.

With respect to the provisions of the FRO that limited defendant's contact with his son, we conclude that to the extent defendant contends the Family Part did not have jurisdiction to address visitation and custody issues absent personal jurisdiction over him, he is mistaken. It is well-settled that Family Part judges may exercise jurisdiction in cases involving custody or parental rights, even where a defendant-parent is totally absent from the State, because the child, the res of the dispute, is present in New Jersey. See Genoe v. Genoe, 205 N.J. Super. 6, 13-14 & n.1 (App. Div. 1985) (citing Shaffer v. Heitner, 433 U.S. 186, 208 n.30 (1977)); Div. of Youth & Family Servs. v. M.Y.J.P., 360 N.J. Super. 426, 459-60 (App. Div. 2003) (in action to terminate parental rights, court exercises jurisdiction over a mother who remained in Haiti based on contact with DYFS, the State's concern for child's welfare, and mother's request that child remain in New Jersey); Ali v. Ali, 279 N.J. Super. 154, 167-68 (Ch. Div. 1994) (court exercised jurisdiction over a father in Palestine to determine child custody following a foreign ex-parte divorce and custody decision that was not

apparently based on child's best interests, and New Jersey was the child's "home state" under the Uniform Child Custody Jurisdiction Act).

III.

In sum, we vacate the FRO and remand the matter for further factual findings to address the jurisdictional issues. Those additional factual findings should identify any contact between defendant and New Jersey after 2014, including any contact with plaintiff after the Arizona no contact order. We stress that the provisions of the TRO, including all restraints, and those provisions of the TRO concerning temporary custody of the parties' son and the prohibition of any contact by defendant toward both plaintiff and their son, shall remain in full force and effect pending further order of the trial court. The court should complete the remanded proceedings and issue any additional factual findings within thirty days. This decision shall not be construed as precluding a further hearing if the trial court, either sua sponte or on the application of a party, determines that further testimony or certifications are necessary on the jurisdictional issue.

In the event the court determines, based on the remanded proceedings, that a FRO was improvidently granted, it shall, consistent with Shah, continue the TRO which shall remain in effect indefinitely or until further modified by the

18

court.  As the court clearly had jurisdiction over the parties' son to issue an order addressing custody and visitation issues, any party may petition the court for modification of any order to address the custody or visitation issues.

Affirmed in part, vacated in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3462-18T4