**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1057-21

M.A.P.,

      Plaintiff-Respondent,

v.

E.B.A.,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**March 24, 2022**

**APPELLATE DIVISION**

Argued March 2, 2022 – Decided March 24, 2022

Before Judges Fisher, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FD-09-0282-21.

Lindsay A. McKillop argued the cause for appellant (The Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh and Lindsay A. McKillop, on the brief).

M.A.P., respondent, argued the cause pro se.

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider whether New Jersey's Uniform Interstate Family Support Act's[1] long arm statute[2] may reach a nonresident alleged to have fathered a child through a sexual relationship with a New Jersey resident that occurred in New York. Concluding that in these circumstances our courts may not exert personal jurisdiction over a nonresident defendant with no other relevant contact with New Jersey, we reverse and remand for a dismissal of plaintiff's paternity suit.

I

Plaintiff M.A.P. (Maura[3]) gave birth to a child in New Jersey in April 2020. She claims the child was conceived during her brief relationship – in July 2019 in New York City – with defendant E.R.A. (Edward), an Argentine national. At that time, Maura was a New Jersey resident and Edward resided either in New York or in the District of Columbia. Maura first filed a paternity suit against Edward in the District of Columbia. Although Edward appears not to have objected to having the paternity dispute resolved there, Maura

---

[1] N.J.S.A. 2A:4-30.124 to -30.201.

[2] N.J.S.A. 2A:4-30.129.

[3] All names used in this opinion are fictitious to protect the parties' and the child's privacy.

A-1057-21

discontinued the action in September 2020. By the time she commenced this New Jersey paternity action, Edward had returned to Argentina indefinitely.

When Edward failed to appear in this action – later claiming he was not properly served with process – the judge conducted a hearing and granted Maura relief based on her testimony alone. A few months later, defense counsel made a limited appearance, seeking dismissal based on an alleged lack of personal jurisdiction over Edward and the alleged insufficiency of service of process; he alternatively sought an order vacating the prior substantive order. The judge heard the argument of both Maura, who then and now represents herself, and Edward's counsel, and denied Edward's jurisdictional motion for reasons expressed in an oral decision. The judge did not address Edward's claim that he was not properly served with process.

II

We granted Edward's motion for leave to appeal to consider the trial judge's determination that Edward is subject to personal jurisdiction in our courts. In his brief on the merits, Edward argues that New Jersey lacks personal jurisdiction over him because: "the child does not reside in New Jersey as a result of [his] acts and directives"; he "does not maintain sufficient minimum

A-1057-21

contacts with New Jersey"; and "fair play and substantial justice" militate against haling him into court here.

The Legislature has declared that our courts may exercise personal jurisdiction in an action "to determine parentage of a child" over a nonresident individual in any one of seven instances delineated in N.J.S.A. 2A:4-30.129(a). Five of those instances do not even arguably apply here.[4]

The other two permit personal jurisdiction over a nonresident when "the child resides in this State as a result of the [nonresident's] acts or directives," N.J.S.A. 2A:4-30.129(a)(5) (subsection (5)), and when "there is any other basis consistent with the constitutions of this State and the United States," N.J.S.A. 2A:4-30.129(a)(7) (subsection (7)). We are satisfied that Maura presented insufficient evidence to support a prima facie claim to personal jurisdiction under either subsection.

---

[4] The inapplicable five permit the exercise of personal jurisdiction when the individual is: "personally served with a summons or notice within this State"; "submits to the jurisdiction of this State"; "resided with the child in this State"; "resided in this State and provided prenatal expenses or support for the child"; and "engaged in sexual intercourse in this State and the child may have been conceived by that act of intercourse." N.J.S.A. 2A:4-30.129(a)(1), (2), (3), (4), and (6).

## A. SUBSECTION (5)

The trial judge concluded that subsection (5) allowed for the exertion of personal jurisdiction over Edward, even though he and Maura engaged in sexual relations outside this State, because he knew Maura was a New Jersey resident. We reject the far too facile view that subsection (5)'s required "act" may be the sexual act that caused conception.

First, the judge's view that subsection (5) allows our courts to determine paternity disputes regardless of where a New Jersey resident may travel and engage in sexual relations does not remotely square with the general limitations of a state's jurisdiction recognized by the due process clause. See Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 469 (1986). When the Legislature enacted subsection (5), it could not have intended such a boundless jurisdictional reach, creating in personam jurisdiction in New Jersey simply because the mother was a New Jersey resident when she allegedly conceived in some other state or country. At first blush, the judge's holding may not seem unreasonable when considering the parties' brief sexual relationship required only Maura's short trip across the Hudson River, but, if endorsed, this interpretation would leave subsection (5) untethered from the due process clause and lead to unpalatable results. For example, had Maura instead traveled to

Alaska and there had a relationship with an Alaskan, who had never been further south or east of Puget Sound, under the judge's interpretation of subsection (5) that Alaskan resident could be compelled to defend a paternity suit in New Jersey simply because he knew at the alleged conception that Maura was a New Jersey resident.

Moreover, the judge's interpretation is not in harmony with the rest of the long-arm statute. The Legislature listed the circumstances that would permit the exercise of jurisdiction over nonresidents in paternity disputes. Because we interpret similar statutes by assuming "the express mention of one thing implies the exclusion of another," Gangemi v. Berry, 25 N.J. 1, 11 (1957); see also Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 215 (2013), subsection (5) must be interpreted as aiming at a different circumstance than that which is covered in other parts of the statute. That is, to interpret subsection (5) as permitting jurisdiction when a plaintiff has sexual relations outside the State with a nonresident, who is aware the plaintiff is a New Jersey resident, would, for example, subsume subsection (6), which allows for jurisdiction over a nonresident who has engaged in sexual intercourse with the plaintiff in this State. What would be the purpose of subsection (6) if subsection (5) is to be interpreted as broadly as held by the judge here?

A-1057-21

Instead, we are satisfied that in enacting subsection (5), the Legislature intended a far more limited basis for personal jurisdiction over a nonresident. Subsection (5) requires evidence that the nonresident engaged in an "act" or issued a "directive" that results in the "child" residing in this State. Considering the plain meaning and sense of these words, we conclude that the "act" or "directive" that causes a "child" to reside in this State is most likely limited to the nonresident's affirmative conduct after the child's birth. This is a more sensible reading because, until a plaintiff successfully gives birth, there is no "child"[5] or mother to that child for a nonresident defendant to act upon or direct and no child about which to sue for a declaration of paternity. Although subsection (5) has not been considered in any of our prior case law, the experience of other states with the same or similar statute focuses on the conduct of the nonresident putative father after the child's birth, not before. See In re Marriage of Malwitz, 99 P.3d 56 (Colo. 2004); Franklin v. Commonwealth,

---

[5] The word "child" as used in these provisions is defined as "an individual . . . over or under the age of majority," N.J.S.A. 2A:4-30.125(a), which clearly denotes a living, breathing "person," not an unborn fetus. See Giardina v. Bennett, 111 N.J. 412, 421 (1988); Smith v. Brennan, 31 N.J. 353, 356 (1960); see also Ex parte Z.W.E., __ So.3d __ (Ala. 2021) (interpreting a similar definition of "child" in Alabama's Uniform Paternity Act as excluding an unborn fetus).

A-1057-21

Dep't of Soc. Servs., Div. of Child Support Enf't ex rel. Franklin, 497 S.E.2d 881 (Va. Ct. App. 1998).

We interpret subsection (5) so that it does not exceed the reach of the due process clause, see Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971), and, therefore, hold that subsection (5) does not extend to a New Jersey's resident's impregnation outside our borders by a nonresident. Viewing subsection (5) as requiring proof of the nonresident putative father's actions or conduct[6] that caused the child to be a resident here – of which there is no evidence – we conclude subsection (5) does not support the exercise of personal jurisdiction.

## B. SUBSECTION (7)

Having found subsection (5) inapplicable, we consider subsection (7). The trial judge concluded Edward had sufficient contacts with New Jersey, but the judge's analysis reveals that she chiefly relied on Edward's sexual relationship with Maura in New York. In responding to the appeal, Maura argues more than that. She argues that Edward had sufficient contact with New Jersey beyond his knowledge that she was then residing in this State when the child was allegedly

---

[6] The words "act" and "directive" also suggest in their context the nonresident's attempt to alter a child's status quo. Maura was already a New Jersey resident when the child was conceived and she remained a New Jersey resident thereafter, at least for a while. See n.9 below. The sexual act, therefore, did not cause any change in Maura's residency.

A-1057-21

conceived. In particular, Maura relies on Edward's retention of a New Jersey attorney to resolve any questions about paternity as a contact with the forum sufficient to permit the exercise of personal jurisdiction under subsection (7). We find no merit in her arguments.

We initially and briefly reject the argument that the facts relied on by the judge in her mistaken application of subsection (5) support a finding of a contact, let alone a sufficient contact, with New Jersey, for the reasons expressed above.

Instead, we must turn to the central question posed by subsection (7): did Edward, a nonresident, "purposefully avail[] [himself] of the privilege of conducting activities within the forum State" so that he would have "reasonably anticipate[d]" being haled into this forum as a result. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985). Stated another way, the due process clause requires that a nonresident's contacts with the forum be such that maintenance of the suit in the forum "does not offend 'traditional notions of fair play and substantial justice.'" World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

When making this determination, our jurisprudence requires that courts distinguish between the nonresident's contacts with the forum that relate to the

claims asserted and the contacts with the forum that are unrelated to the claims asserted. Waste Mgmt. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994). The former is referred to as "specific" jurisdiction and the latter as "general" jurisdiction. These concepts are applied in the same way in paternity suits as in other cases. C.L. v. W.S., 406 N.J. Super. 484, 492 (App. Div. 2009).

There not having been an evidentiary hearing about the existence or sufficiency of Edward's relationship with New Jersey, we consider the applicability of subsection (7) – and whether discovery, an evidentiary hearing, or both, are required – by first considering some undisputed facts and by assuming the truth of Maura's factual assertions. First, Edward lived in New Jersey from 2012 until he moved to Virginia in June 2018. It was there he and Maura met. Maura moved to New Jersey and Edward to New York sometime in 2019. Edward did not remain in New York long; later in 2019 he moved to the District of Columbia. There is no allegation Edward ever resided in New Jersey during the time the parties knew each other or, for that matter, since.

Because there is no evidence of Edward having contacts with New Jersey to support a claim of general jurisdiction,[7] we consider whether Edward had

---

[7] Maura asserted in the trial court that, after he permanently moved away from New Jersey in 2018, Edward remained involved in writing an essay with a

contacts with New Jersey that related to this particular matter that would justify a finding of specific jurisdiction. In this regard, Maura asserts that Edward sent a letter to her New Jersey address in April 2020 stating his lack of interest in being involved with her or the child. He also sent text messages to Maura – we'll assume she received them while she was in New Jersey – that struck a more friendly tone. But these communications are insufficient to establish specific jurisdiction. The minimum contacts required by the due process clause cannot consist of these types of inessential communications sent into the forum state or to a resident of the forum. See Lebel v. Everglades Marina, Inc., 115 N.J. 317, 325 (1989); Egg Harbor Care Ctr. v. Scheraldi, 455 N.J. Super. 343, 354-55 (App. Div. 2018).

Maura also refers to letters sent by Edward's former New Jersey attorney to her in October 2019. These letters conveyed proposals for amicably resolving the paternity dispute. Even though there was a suggestion – never agreed on – that Edward travel to New Jersey to have blood drawn, that suggestion was part of a settlement proposal, and we are satisfied it would be against the policies underlying N.J.R.E. 408 for offers of settlement to be used in this manner. See,

Princeton University professor. There, however, is no allegation or assertion about the extent of that academic relationship or that Edward ever entered this State in furtherance of that project.

e.g., Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 796 (6th Cir. 1996).[8]

Maura also asserted in the trial court that Edward "visited [her] at [her] New Jersey apartment in August 2019 to discuss the pregnancy." She, however, provided no information about what may have been discussed that would have relevance to the jurisdictional question, and Edward apparently disputes this meeting ever occurred. Without more, we fail to see how this single alleged New Jersey visit could form the sole support for a finding that would be consistent with fair play and substantial justice in exerting personal jurisdiction over the nonresident. In the final analysis, the jurisdictional question is not governed by a mere counting of contacts or the mere existence of a single inessential contact of indiscernible importance. Courts must consider the quality of the nonresident's relationship to the forum and the litigation. Kulko v. Super. Ct. of

---

[8] We are mindful that N.J.R.E. 408 precludes evidence of settlement discussions and the like only when offered "to prove or disprove the liability for, or invalidity of, or amount of the disputed claim." But we agree with the Nationwide court that steps taken in pursuit of settlement – a favored policy in the law and in this State, Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) – should not be considered as proof that the nonresident purposefully availed him- or herself of the forum's laws because it would de-incentivize settlement negotiations. In Nationwide, for example, the court held irrelevant to a determination whether a Danish corporation could be haled into an Ohioan court because it had previously sent a representative to Ohio to attempt to negotiate a settlement with the plaintiff.

Cal., 436 U.S. 84, 92 (1978). Without an understanding about what occurred at this alleged meeting in New Jersey or its ultimate impact on the child becoming a New Jersey resident after his birth in April 2020, and without any evidence to suggest that this one meeting revealed Edward intended to avail himself of the laws of New Jersey, World-Wide Volkswagen, 444 U.S. at 297, we reject the notion that it would be fair to subject Edward to the jurisdiction of our courts on such evidence. Whether a nonresident's contacts represent a "purposeful availment" of the forum's laws is not met "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp., 471 U.S. at 475 (citations omitted).

III

For these reasons, we find no merit in Maura's contentions that either subsection (5) or subsection (7) of N.J.S.A. 2A:4-30.129(a) provide a basis for exercising personal jurisdiction over Edward in our courts. Although not argued, we also find no basis for compelling discovery into the jurisdictional dispute or a need for an evidentiary hearing. Accepting at face value the truth of Maura's

13

allegations about Edward's alleged relationship to New Jersey leads us to the same place and requires a discontinuance of this action.[9]

The order under review is reversed and the matter is remanded to the trial court for the entry of an order dismissing the complaint. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] We lastly note that the judge's decision seems to have also been informed by her concern that Maura's only alternative forum would be in Argentina. Even if that was a factor, it has not been shown that Edward would not be subject to personal jurisdiction in more convenient fora. For example, we note that, according to her submissions in this court, Maura appears to now reside in New York City. Assuming the child also resides with her, and considering her allegation that conception occurred during relations with Edward in New York City, it is hard to see why New York might not be able to exert personal jurisdiction over Edward. New York's Uniform Interstate Family Support Act contains a long-arm statute identical to N.J.S.A. 2A:4-30.129(a), and permits the exercise of personal jurisdiction over a nonresident who "engaged in sexual intercourse" in New York with the result that "the child may have been conceived by that act of intercourse." N.Y. Family Law § 580-201(a)(6) (Consol. 2016). We also reiterate that Maura previously commenced a paternity suit in the District of Columbia, apparently when Edward was a resident there, without a dispute from Edward about the exercise of personal jurisdiction over him. Assuming the lack of a more convenient forum than Argentina is a basis for exercising in personam jurisdiction, it hasn't been shown Argentina is the only available forum.