NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2956-16T4

EGG HARBOR CARE CENTER,

    Plaintiff-Appellant,

v.

PATRICIA SCHERALDI and
BETTY TERHUNE DAVIS,

    Defendants,

and

COREY PAGANO,

    Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 10, 2018**
>
> **APPELLATE DIVISION**

Argued June 5, 2018 – Decided July 10, 2018

Before Judges Fisher, Sumners, and Natali.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-0166-16.

Kevin S. Englert argued the cause for appellant (Law Office of Laurie M. Fierro, PA, attorneys; Laurie M. Fierro, of counsel; Kevin S. Englert, on the brief).

Jennifer M. Carlson argued the cause for respondent (Richard M. Pescatore, PC, attorneys; Jennifer M. Carlson, on the brief).

The opinion of the court was delivered by

NATALI JR., J.S.C. (temporarily assigned).

In this collection action we must determine whether a New Jersey court may, consistent with the Due Process Clauses of the State and Federal Constitutions, permissibly exercise specific personal jurisdiction over a California resident for losses incurred by a New Jersey nursing facility that was caring for the Californian's mother. Because we conclude the quantity and nature of the California resident's contacts with New Jersey are so remote and insufficient that to hale him into New Jersey to defend this action would offend "traditional notions of fair play and substantial justice,"[1] we affirm the trial judge's decision to dismiss the case. We remand only to permit the entry of an amended order dismissing the action without prejudice.

Before moving to New Jersey, Patricia Scheraldi lived in Virginia where she executed a durable, general power of attorney naming her son, defendant Corey Pagano as her attorney-in-fact. Pagano has not lived in New Jersey in over three decades and has not set foot in our state in seventeen years.

Scheraldi became a resident of plaintiff Egg Harbor Care Center after suffering a stroke and broken hip. Prior to her admission on July 7, 2014, she and her sister, Betty Terhune Davis, also a New Jersey resident, executed an admission agreement with

---

[1]  Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

Egg Harbor that contained provisions detailing the parties' respective responsibilities related to Scheraldi's care and, of course, payment. Among the obligations Davis agreed to shoulder was to advocate on Scheraldi's behalf before social services and to be a co-guarantor for Scheraldi's payment obligation. Pagano was neither presented with nor signed the admission document. Rather, he was merely listed as an "other person to be notified."

Consistent with these obligations and shortly after Scheraldi's admission, Davis filed for Medicaid benefits with the Atlantic County Medicaid Long Term Care Unit (Medicaid Office). Davis' application was denied because Pagano was in control of a California bank account in Scheraldi's name in the amount of $4700, which was above the maximum allowed for Medicaid eligibility. Pagano attempted to contact the Medicaid office on numerous occasions via telephone, email, and facsimile to provide information and ask questions surrounding Scheraldi's application. Pagano ultimately spent down Scheraldi's assets and she was granted coverage beginning January 1, 2015. As a result of Pagano's delay, Egg Harbor did not receive payment from Medicaid for Scheraldi's care from July through December of 2014. The loss of reimbursement from Scheraldi during these five months forms the factual basis for Egg Harbor's damages.

After an appeal of the Medicaid disqualification period was filed, an Administrative Law Judge (ALJ) reversed the decision of the Medicaid Office. The ALJ also noted the submission of a letter that Pagano sent outlining his efforts to contact the Medicaid Office. The ALJ's decision was reversed by the Director of the Division of Medical Assistance and Health Services (Director).

Egg Harbor filed a complaint in the Law Division to recover the approximately $19,000 allegedly owed by Scheraldi, Davis and Pagano. As to Pagano, Egg Harbor alleged that he committed negligence, breached his fiduciary obligation and interfered with Egg Harbor's contractual relations and economic advantage by failing to timely pay down Scheraldi's assets. Davis was dismissed from the case after declaring bankruptcy and Egg Harbor obtained default judgment against Scheraldi.

Pagano moved to dismiss the complaint claiming New Jersey lacked personal jurisdiction over him. Egg Harbor challenged Pagano's contacts by relying upon the certification of Rosemarie Barruos, Egg Harbor's accounts receivable supervisor. According to Barruos, in addition to being Scheraldi's attorney-in-fact, Pagano served as the representative payee of Scheraldi's monthly pension income, which means that he "receive[d] it on her behalf each month and pays it monthly to Egg Harbor through the mail from California to New Jersey." Barruos also averred that since

Scheraldi's admission, she and her staff "have had many conversations and email communications with Mr. Pagano." Although she failed to detail precisely the substance of those conversations, Egg Harbor's merits brief provides that Pagano "maintained regular contact with Egg Harbor by email and telephone" and that the contact was "presumably related to Scheraldi's ongoing health care." Finally, Barruos contended that Pagano's contacts with New Jersey included communications with social services in New Jersey and his direct and indirect prosecution of the action before the ALJ and the Director.

The trial judge agreed with Pagano and dismissed the complaint with prejudice. On appeal, Egg Harbor makes the same arguments rejected by the trial judge claiming: (1) Pagano's email and telephone contacts with Egg Harbor related to Scheraldi's care; and (2) Pagano's communications with Medicaid and actions with respect to the proceedings before the ALJ and the Director are sufficient to exercise personal jurisdiction over him. We disagree and affirm.

"We review the [trial] court's factual findings with respect to jurisdiction to determine whether they were supported by substantial, credible evidence" in the record. Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007). "A trial court's interpretation of the law and the legal

consequences that flow from established facts are not entitled to any special deference[,]" and, as such, our review of a trial judge's legal conclusions surrounding personal jurisdiction is plenary. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

The "Due Process Clause of the Fourteenth Amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants." Kulko v. Super. Ct. of Cal., 436 U.S. 84, 91 (1978). "[A] valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." Ibid.; see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980).

A New Jersey court "may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'" Bayway Refining Co. v. State Utilities, Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) (quoting R. 4:4-4(b)(1)). A two-part test governs our analysis:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, [(1)] he have certain minimum contacts with it [(2)] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

> [Int'l Shoe, 326 U.S. at 316 (quoting
> Milliken, 311 U.S. at 463).]

The necessary "quality and quantum of contacts" depends on whether specific or general jurisdiction is asserted. Citibank, N.A. v. Estate of Simpson, 290 N.J. Super. 519, 526 (App. Div. 1996). Specific jurisdiction, which Egg Harbor invokes here, is established when "a cause of action arises directly out of a defendant's contacts with the forum state." Waste Mgmt. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994).[2]

"'Minimum contacts' are the threshold requirements for specific personal jurisdiction," ibid., and we evaluate minimum contacts on a case-by-case basis, Blakey v. Cont'l Airlines, 164 N.J. 38, 66 (2000). The inquiry "must focus on the relationship among the defendant, the forum, and the litigation." Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 474 (App. Div. 2013) (quoting Lebel, 115 N.J. at 323). There must be "some act by which the defendant purposefully avails itself of the

---

[2] If the suit "is not related directly to the defendant's contacts with the forum state, but is based instead on the defendant's continuous and systematic activities in the forum, then the State's exercise of jurisdiction is 'general.'" Waste Mgmt., 138 N.J. at 119. When general jurisdiction exists, the defendant is subjected "to suit on virtually any claim." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989). Because Egg Harbor does not contend that Pagano's contacts with New Jersey rise to the level necessary to exercise general jurisdiction, we do not address the issue.

privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." Waste Mgmt., 138 N.J. at 120 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

The minimum contacts requirement is satisfied if the defendant's contacts resulted from their "purposeful conduct and not the unilateral activities of the plaintiff," Lebel, 115 N.J. at 323, or the "unilateral activity of another who merely claims a relationship to the defendant," Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 471 (1986). In evaluating "whether the defendant's contacts are purposeful, a court must examine the defendant's 'conduct and connection' with the forum state and determine whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refining Co., 333 N.J. Super. at 429 (quoting World-Wide Volkswagen, 444 U.S. at 297)). Simply put, the purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Lebel, 115 N.J. at 323-24 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). In terms of purposeful availment, it is recognized that "the mere transmittal of messages by mail or telephone within the state is not the critical factor, it is the nature of the contact." Lebel, 115 N.J. at 325.

Once it is established that a defendant's activities establish minimum contacts with the forum state, we must then evaluate whether it would be reasonable to exercise that jurisdiction. Baanyan, 433 N.J. Super. at 476-78. In other words, we must consider whether it would "offend 'traditional notions of fair play and substantial justice'" to entertain the suit. Id. at 473-74 (quoting Int'l Shoe, 326 U.S. at 316). To do so, we evaluate the burden on the defendant, the forum state's interests, and the interests of the plaintiff in obtaining relief. Id. at 476 (quoting Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987)).

We accept, as did the trial judge, the established jurisdictional facts and also recognize, as did the United States Supreme Court over forty years ago, that any jurisdictional analysis is not subject to mechanical application in which answers are rarely written "in black and white. The greys are dominant and even among them the shades are innumerable." Kulko, 436 U.S. at 92 (quoting Estin v. Estin, 334 U.S. 541, 545 (1948)).

It is clear upon consideration of the relationship "among [Pagano], the forum, and the litigation," Lebel, 115 N.J. at 323 (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)), that Pagano did not purposefully avail himself of the laws and protections of New Jersey. Pagano's "conduct and connection," Bayway Refining

Co., 333 N.J. Super. at 429 (quoting World-Wide Volkswagen, 444 U.S. at 297), with New Jersey arises out of his relationship with his mother and her residency in the state: (1) he is the payee for her incurred obligations; (2) he contacted Egg Harbor regarding her healthcare; and (3) he was involved in efforts to obtain her Medicaid coverage. Despite Egg Harbor's argument that Pagano's contacts support a finding of specific jurisdiction, Pagano could not "reasonably anticipate being haled into court" in New Jersey based upon his actions for the benefit of his mother. Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 297). In other words, Pagano did not "purposely create[] contacts with New Jersey." Lebel, 115 N.J. at 324. He did not sign the admission agreement and did not otherwise assent to a single term that would have obligated him for his mother's expenses. This absence of any contractual relationship with Egg Harbor, when combined with his lack of residency and lack of physical presence for such an extended period, fairly characterize his contacts as "attenuated." Id. at 323.

Stated differently, we conclude it is inappropriate for a court to find a nonresident defendant such as Pagano subject to personal jurisdiction based upon contacts with the forum state when he cannot reasonably prevent those contacts or encounters. In other words, purposeful availment exists where it is reasonably

feasible for a defendant to sever contacts with a forum, but chooses not to do so. See Henry S. Noyes, The Persistent Problem of Purposeful Availment, 45 Conn. L. Rev. 1, 34 (2012); World-Wide Volkswagen, 444 U.S. at 297 ("When a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State,' Hanson v. Denckla, 357 U.S., at 253, it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation. . . .").

Here, Pagano's relevant interactions with Egg Harbor and his attendant contacts to secure benefits for his mother were not affirmative choices that he could reasonably prevent. Indeed, his power-of-attorney (formed in Virginia) obligated him to address issues related to his mother's assets. That those contacts took place in New Jersey reflects the fortuitous status of his mother's residence in a New Jersey facility, a decision to which he played no meaningful role. On these facts, we conclude Pagano's communications with New Jersey were not purposeful in the context of a minimum contacts analysis.

In light of our finding that Pagano fails to possess the requisite minimum contacts necessary to permit a New Jersey court to invoke jurisdiction, we are not required to consider, and therefore do not discuss extensively, the second part of the test: whether it would offend "traditional notions of fair play and

substantial justice," Int'l Shoe, 326 U.S. at 316 (quoting Milliken, 311 U.S. at 463), to hale Pagano into a New Jersey court. But, even if we were to consider the issue, for the reasons we have detailed, it would clearly be unreasonable to require Pagano to defend this case in New Jersey. And, while Egg Harbor's "interest in obtaining relief is but one of the facts that we must consider in determining whether the exercise of personal jurisdiction" over Pagano is reasonable, Baanyan, 433 N.J. Super. at 478, Pagano should not be burdened with defending a New Jersey lawsuit simply because Egg Harbor has been unsuccessful in obtaining relief from Scheraldi and Davis.

Finally, as the dismissal of the complaint was not an adjudication on the merits, the dismissal order should have been without prejudice, not with prejudice. "As a general rule, a dismissal on the merits is with prejudice while a dismissal based on the court's procedural inability to consider a case is without prejudice." Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 4:37-2 (2018) (citing Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 415-16 (1991)). Dismissal for lack of jurisdiction is not an adjudication on the merits. R. 4:37-2(d) ("[A]ny dismissal not specifically provided for by R. 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits."). See also Korvettes, Inc. v. Brous,

617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'"); A.A. v. Gramiccioni, 442 N.J. Super. 276, 281 n.3 (App. Div. 2015) ("A dismissal based on the court's procedural inability to consider a case is without prejudice."); Exxon Research & Eng'q Co. v. Indus. Risk Insurers, 341 N.J. Super. 489, 519 (App. Div. 2001) (finding that a dismissal for lack of jurisdiction should be without prejudice because such a dismissal is not an adjudication on the merits).

Affirmed and remanded with directions to amend the order to dismiss the case without prejudice.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13