NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3696-19T2

KENNETH ZAHL,

       Plaintiff-Respondent,

v.

HIRAM EASTLAND, JR.,
EASTLAND LAW OFFICES,
and EASTLAND LAW OFFICES
PLLC,

       Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **October 22, 2020**
>
> **APPELLATE DIVISION**

Argued September 14, 2020 – Decided  October 22, 2020

Before Judges Messano, Hoffman and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0851-16.

Bruce D. Greenberg argued the cause for appellants (Lite, DePalma, Greenberg, LLC, attorneys; Bruce D. Greenberg, on the briefs).

David Maran argued the cause for respondent (Maran & Maran, PC, attorneys; David Maran, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

We granted defendants, Hiram Eastland, Jr., and his associated law firms, Eastland Law Offices and Eastland Law Offices, PLLC (collectively, Eastland), leave to appeal the trial court's order denying defendants' motion to dismiss for lack of personal jurisdiction. Plaintiff Kenneth Zahl, a New Jersey resident, alleged Eastland committed legal malpractice and excessively billed him during his unsuccessful representation of Zahl in a federal lawsuit. That suit, filed in the federal district court for New Jersey, alleged, among other causes of action, civil racketeer influenced and corrupt organization (RICO) violations against New Jersey officials and departments arising from the State's prosecution of disciplinary actions against plaintiff and revocation of his medical license. See In re License Issued to Zahl, 186 N.J. 341 (2006). The facts surrounding the jurisdictional question are essentially undisputed.[1]

In June 2005, on the advice of an acquaintance, plaintiff contacted Eastland regarding representation in a potential federal lawsuit alleging

---

[1] This case is before us a second time. We previously reversed the default judgment in excess of $1 million entered in favor of plaintiff, concluding that the trial judge at that time misapplied the law when resolving discovery disputes and prematurely entered final judgment by default in violation of applicable Court Rules. Zahl v. Eastland, No. A-4330-17 (App. Div. May 8, 2019) (Zahl I). Although citing an unpublished opinion is generally forbidden, we do so here to provide a full understanding of the issues presented and pursuant to the exception in Rule 1:36-3 that permits citation "to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law[.]" See, e.g., Badiali v. N.J. Mfrs. Ins. Grp., 429 N.J. Super. 121, 126 n.4 (App. Div. 2012), aff'd, 220 N.J. 544 (2015).

systemic corruption in New York's court system, the venue of plaintiff's divorce litigation. Eastland was a resident of Mississippi, and the law firms were located there. He had several phone conversations with plaintiff, met an FBI agent in New York to urge the Bureau's pursuit of plaintiff's allegations, and met with plaintiff in Mississippi several times. Eastland met with plaintiff at Newark Liberty Airport during his trip to New York and came to New Jersey on one other occasion to observe plaintiff's pro se presentation during an administrative hearing regarding his medical license.

In December 2005, Eastland emailed plaintiff a six-page engagement letter. Alluding to prior discussions, Eastland described the document as:

> a formal engagement letter for the federal legal issues you and I have been extensively reviewing together since earlier this year for which we have now determined if factually and legally feasible to initiate the next phase of the review and litigation initiative by drafting a detailed legal memorandum and associated draft complaints for potential filing in federal court in New York and/or New Jersey.

Eastland continued, "you are also engaging me to provide legal services involving certain other federal issues, including review of certain [M]edicare billing interpretative and policy issues related to your . . . lawsuit filed in the . . . District Court of New Jersey." Eastland said plaintiff was engaging him to "potentially file certain federal civil RICO claims, as well as . . . review and potentially file certain civil rights federal claims you may have in New

Jersey[.]" Eastland described these federal claims as pertaining to "actions engaged in by an agent of the [New Jersey] Attorney General's [O]ffice" in revoking plaintiff's medical license.

Eastland added that if "any related state law issues that require review and legal advice" arose, he would "associate local counsel licensed to practice in the respective states." Eastland further alluded to a prior July meeting with plaintiff at which a retainer was discussed and asked plaintiff to agree to a $50,000 retainer, against which Eastland would draw at a $225 hourly rate for the "next phase" of the case. Plaintiff retained Eastland.[2]

During May and June 2006, Eastland was apparently very busy representing the former governor of Alabama in a criminal trial.[3] Eager to have his complaint filed in New Jersey's federal district court, plaintiff visited Eastland in Alabama to discuss the litigation. Eastland certifies that he told plaintiff they "were nowhere near being able to draft a New Jersey federal RICO complaint without extensive further due diligence review." Nevertheless, plaintiff drafted his own complaint, naming the New Jersey Attorney General and other public officials, as well as the Department of

---

[2] The record does not include an executed copy of the retainer, but the parties do not dispute that the agreement was executed by both.

[3] See United States v. Siegelman, 467 F. Supp. 2d 1253 (M.D. Ala. 2006).

A-3696-19T2

Public Safety and the Division of Consumer Affairs, as defendants. A licensed New Jersey attorney, Robert J. Conroy, filed the complaint in federal district court on plaintiff's behalf.[4]

The district court docket indicates Eastland filed a motion on October 9, 2006, to appear pro hac vice on plaintiff's behalf as co-counsel in the federal suit. Eastland's affidavit stated he was an attorney in good standing in the district court for the Northern District of Mississippi, was "familiar with the rules governing the conduct of attorneys in New Jersey, including the rules of [the district court of New Jersey] and the . . . Code of Professional Responsibility," and intended "to adhere to those rules." Additionally, Eastland "agree[d] to comply with all local rules of [the district] [c]ourt, to make payment to the New Jersey Lawyer's Fund for Client Protection [(the Client Protection Fund)] pursuant to [Rule]1:28-2(a) and to take no fee . . . in excess of New Jersey Court [Rule]1:27-7 covering contingent fees."

The district court granted Eastland's motion and ordered him to make payment to the Client Protection Fund for all years that the case would be

---

[4]   The record is mostly silent on the circumstances surrounding Conroy's retention. In answers to interrogatories, plaintiff stated that defendant and he met with Conroy, who previously represented plaintiff in the licensing matter, in 2006, and had him agree to act as local counsel in the federal case. Conroy and his firm were initially named as defendants in this lawsuit against Eastland, but settled with plaintiff. Zahl I, slip op. at 2 n.1.

pending in federal court. Eastland acknowledges that he prepared numerous pleadings in plaintiff's federal lawsuit, including amended complaints, motions and responses to motions; the federal docket bears witness to the filings, all of which were made by Conroy as local counsel.[5]

In March 2008, the federal district court dismissed most of plaintiff's claims against the State defendants, including the RICO claims. Zahl v. N.J. Dep't of Law & Pub. Safety, No. 06-3749 (D.N.J. Mar. 26, 2008). According to plaintiff, Eastland recommended the filing of an amended complaint to re-instate the RICO claims, and the docket reveals that Conroy moved to file an amended complaint. The district court judge denied the motion, and, on September 18, 2009, entered an order dismissing with prejudice all claims against the State defendants. Zahl v. N.J. Dep't of Law & Pub. Safety, No. 06-3749 (D.N.J. Sept. 18, 2009).

We need not detail applications that continued to be made in the district court, some admittedly drafted by Eastland, before the litigation finally ended in dismissal of the complaint against all parties. Eastland certifies that he "was essentially removed from the case at that point," plaintiff having retained Verner on appeal to the Third Circuit. On May 18, 2011, the Third Circuit

---

[5] Paul J. Verner succeeded Conroy as local counsel in March 2009. Verner filed various pleadings on plaintiff's behalf thereafter.

affirmed the dismissal of plaintiff's claims in their entirety. Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs, 428 F. App'x 205, 207 (3d Cir. 2011). Eastland was never physically present in New Jersey with respect to any of the federal district court proceedings, although he acknowledged being on a phone conference with the district court judge on one occasion.

Plaintiff filed this complaint in 2016, and Eastland immediately contested personal jurisdiction. We detailed in our prior opinion the fits and starts in the litigation, Zahl I, slip op. at 2–7, before Eastland again moved earlier this year to dismiss the complaint for lack of personal jurisdiction.

In a comprehensive written opinion, the judge denied the motion. Reviewing general principles regarding specific personal jurisdiction and several federal and out-of-state decisions involving attorneys from outside the forum state, the judge concluded that "[d]efendants['] admittance pro hac vice in federal court in New Jersey [was] not enough, on its own, to establish specific jurisdiction[.]" The judge further found that defendants "did not, on their own account, seek the [p]laintiff out as a client. . . . Plaintiff sought out the [d]efendants, and they, in turn, accepted his request for their services." The judge ultimately determined, however, that defendants

> purposely availed themselves of the opportunity to represent the [p]laintiff, a New Jersey resident, in federal court in New Jersey. No case has been cited to this [c]ourt which stands for the proposition that the

[c]ourt lacks personal jurisdiction over an attorney who has been admitted to practice before any court in the forum state, whether on a "limited" pro hac vice basis or otherwise. . . . [T]he limited persuasive authority on this issue stands for the opposite view.

We granted Eastland leave to appeal the order denying his motion to dismiss.

Eastland contends the motion judge made "several crucial legal errors[,]" in particular, utilizing the more liberal standard applicable to motions to dismiss for failure to state a claim under Rule 4:6-2(e), rather than "the more balanced test for personal jurisdiction motions." Eastland also asserts it was error for the judge to conclude he purposely availed himself of the opportunity to represent plaintiff in New Jersey when it is undisputed plaintiff solicited Eastland. Lastly, Eastland argues that considerations of "fair play and substantial justice" mitigate against having to defend himself in New Jersey's state court. Although our court has considered the exercise of personal jurisdiction over out-of-state attorneys before, we have yet to address the issue under similar facts to those presented here.

## I.

We agree with Eastland that a court should not review a motion to dismiss based on lack of personal jurisdiction using the same indulgent standard employed to decide a motion seeking dismissal for failure to state a claim. See R. 4:6-2(e). "The standard a trial court must apply when

considering a Rule 4:6-2(e) motion to dismiss a complaint for failure to state a claim upon which relief can be granted is 'whether a cause of action is "suggested" by the facts.'" Teamsters Local 97 v. State, 434 N.J. Super. 393, 412 (App. Div. 2014) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "Accordingly, review of a complaint's factual allegations must be 'undertaken with a generous and hospitable approach.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 107 (2019) (quoting Printing Mart-Morristown, 116 N.J. at 746). The motion judge's written decision began by employing this standard of review, and, in that respect, the judge erred.

However, "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). Although he may have erred by reciting the wrong standard for review, the balance of the judge's opinion evidenced an understanding of the principles governing the exercise of personal jurisdiction.

We clear the air by acknowledging that "[w]hen a motion to dismiss for lack of jurisdiction is made, it is only the jurisdictional allegations that are relevant, not the sufficiency of the allegations respecting the cause of action."

Rippon v. Smigel, 449 N.J. Super. 344, 359–60 (App. Div. 2017) (citing Citibank, NA v. Estate of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). A motion to dismiss for lack of personal jurisdiction pursuant to Rule 4:6-2(b) presents "'a mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed[.]'" Pullen v. Galloway, 461 N.J. Super. 587, 596 (App. Div. 2019) (quoting Rippon, 449 N.J. Super. at 359), certif. denied, 241 N.J. 137 (2020). While we generally defer to the motion judge's factual findings, here, as already noted, the essential facts are undisputed. "We review de novo the legal aspects of personal jurisdiction." Ibid. (citing Rippon, 449 N.J. Super. at 358). We turn to some general principles.

## II.

"[O]ur courts have adopted an approach to exercise jurisdiction over nonresident defendants 'to the uttermost limits permitted by the United States Constitution.'" Jardim v. Overley, 461 N.J. Super. 367, 377 (App. Div. 2019) (quoting Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971)). "A New Jersey court 'may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'"" Egg Harbor Care Ctr. v. Scheraldi, 455 N.J. Super. 343, 351 (App. Div. 2018) (quoting Bayway Refin. Co. v. State Utils., Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) in turn quoting R. 4:4-

4(b)(1)). "[A] state court's assertion of personal jurisdiction does not violate the Due Process Clause if the defendant has 'certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Blakey v. Cont'l Airlines, 164 N.J. 38, 65 (2000) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"[T]he jurisdictional test is not to be applied mechanically[,]" Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 470 (1986), but is "fact-specific" and conducted "case-by-case[.]" Jardim, 461 N.J. Super. at 377 (quoting Bayway, 333 N.J. Super. at 429). Plaintiff bears the "burden of establishing a prima facie basis for exercising personal jurisdiction over defendant[s]." Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 476 (App. Div. 2013) (citing Blakey, 164 N.J. at 71).

"The first step is to determine whether defendants have had the requisite minimum contacts with New Jersey." Shah v. Shah, 184 N.J. 125, 138 (2005) (quoting Blakey, 164 N.J. at 66).[6]

---

[6] Both parties agree that we consider only whether New Jersey may exercise specific, as opposed to general, personal jurisdiction over Eastland. General jurisdiction requires a defendant "have contacts with this State that are 'so continuous and substantial as to justify subjecting the defendant to jurisdiction.'" Baanyan, 433 N.J. Super. at 474 (quoting Waste Mgmt. v. Admiral Ins. Co., 138 N.J. 106, 123 (1994)). The standard for the exercise of general personal jurisdiction "is difficult to meet, requiring extensive contacts

Once an examination of the defendant's minimum contacts with the State is complete, the policy question whether "the assertion of jurisdiction affect[s] traditional notions of fair play and substantial justice[,]" must be addressed. That requires the consideration of a number of factors that comprise "the flip-side of the purposeful availment doctrine, [that is] whether the offending party could reasonably anticipate that the forum state would have a substantial interest in vindicating the personal rights of the injured party."

[Id. at 139 (alterations in original) (quoting Blakey, 164 N.J. at 69).]

A.

"The existence of minimum contacts fundamentally turns upon whether the defendant engaged in 'intentional acts . . . to avail itself of some benefit [in the] forum state.'" Jardim, 461 N.J. Super. at 379 (alteration in original) (quoting Waste Mgmt., 138 N.J. at 126). We "consider whether . . . defendant 'purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State,' or 'purposefully directed' [his] conduct into a forum State." Id. at 376 (first alteration in original) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Critically, the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result

---

between a defendant and a forum." Ibid. (quoting Mische v. Bracey's Supermarket, 420 N.J. Super. 487, 492 (App. Div. 2011)).

A-3696-19T2

of 'random,' 'fortuitous,' or 'attenuated' contacts." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323–24 (1989) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); see also Rippon, 449 N.J. Super. at 360 ("The test for whether the defendant has created a 'substantial connection' with the forum is whether the defendant . . . 'has engaged in significant activities' . . . or has created . . . 'continuing obligations'" in the forum state that are more than "merely 'random,' 'fortuitous,' or 'attenuated.'" (quoting Burger King, 471 U.S. at 475–76)).

Routinely, the "minimum contacts requirement is satisfied if 'the contacts expressly resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff.'" Pullen, 461 N.J. Super. at 597 (quoting Lebel, 115 N.J. at 323). Additionally, "purposeful availment exists where it is reasonably feasible for a defendant to sever contacts with a forum, but [he] chooses not to do so." Egg Harbor Care Ctr., 455 N.J. Super. at 354. "An intentional act calculated to create an actionable event in a forum state will give that state jurisdiction over the actor." Waste Mgmt., 138 N.J. at 126 (citing Calder v. Jones, 465 U.S. 783, 791 (1984)).

Furthermore, "[i]n order for a state court to exercise [specific] jurisdiction over a nonresident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Jardim, 461 N.J. Super. at

376 (third and fourth alterations in original) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)); accord Waste Mgmt., 138 N.J. at 119; Pullen, 461 N.J. Super. at 597; Baanyan, 433 N.J. Super. at 474. "[P]laintiff's claim must 'arise out of or relate to' the defendant's forum-related activities." Jardim, 461 N.J. Super. at 376 (quoting Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 414 (1984)); see also Egg Harbor Care Ctr., 455 N.J. Super. at 352 ("The inquiry 'must focus on the relationship among the defendant, the forum, and the litigation.'" (quoting Baanyan, 433 N.J. Super. at 474)).

Initially, it is beyond cavil that plaintiff's lawsuit arises out of Eastland's alleged contacts with New Jersey, i.e., his "forum-related activities." Jardim, 461 N.J. Super. at 376. Eastland provided representation to plaintiff, a New Jersey resident, in a lawsuit alleging that New Jersey officials and governmental offices engaged in RICO activities against plaintiff. In other words, Eastland assisted plaintiff in his preparing a lawsuit that could only be brought in New Jersey against the very sovereign which jurisdiction Eastland now seeks to avoid on constitutional due process grounds.

Eastland purposely moved for admission and was admitted pro hac vice to serve as co-counsel with a licensed New Jersey attorney to prosecute plaintiff's complaint. Eastland certified that he would be bound by the local rules of New Jersey's federal district court and would make the necessary

payments to the Client Security Fund if admitted. He actively engaged in drafting pleadings and, on one occasion, participated in a phone conference with the federal judge overseeing the litigation. Certainly, if the district court required Eastland's presence in court to argue a motion or appear as necessary had plaintiff's lawsuit proceeded to trial, Eastland would have physically entered New Jersey, perhaps for an extended period of time.

Plaintiff's current lawsuit arises solely out of Eastland's representation of him in the federal district court case. The complaint alleges that in his representation of plaintiff, Eastland unreasonably and excessively billed for his services and committed legal malpractice. We have long recognized that "a non-resident defendant can be subject to this state's specific jurisdiction based on a single tortious act committed by the defendant in New Jersey." Rippon, 449 N.J. Super. at 362 (emphasis added) (citing Jacobs v. Walt Disney World, Co., 309 N.J. Super. 443, 461 (App. Div. 1998)). In short, "focus[ing] on the relationship among the defendant, the forum, and the litigation[,]" it is clear that plaintiff's current complaint arises from Eastland's contacts with this state. Baanyan, 433 N.J. Super. at 474 (quoting Lebel, 115 N.J. at 323).[7]

---

[7] Eastland points out that the motion court's reference to Star Technology v. Tultex Corp., 844 F. Supp. 295, 298 (N.D. Tex. 1993), was inapposite, because the court there determined there was no personal jurisdiction over the out-of-state attorney despite the attorney's actual appearances in court in the forum

Eastland asserts, however, that multiple undisputed facts mitigate against a finding of requisite minimum contacts with New Jersey. Considered alone, each asserted fact, which we discuss below, might be insufficient to establish personal jurisdiction over Eastland in our courts. However, "any jurisdictional analysis is not subject to mechanical application in which answers are . . . written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" Egg Harbor Care Ctr., 455 N.J. Super. at 353 (quoting Kulko v. Superior Ct. of Cal. In & For S.F., 436 U.S. 84, 92 (1978)).

Perhaps most importantly, Eastland contends that plaintiff failed to establish purposeful availment because plaintiff solicited Eastland's representation. In this regard, plaintiff undoubtedly solicited Eastland to investigate and potentially represent him with respect to allegations surrounding plaintiff's New York divorce, but not specifically with reference to the prospective federal litigation in New Jersey. Plaintiff's answer to Eastland's demands for admission draws this distinction.

However, one sphere of representation clearly flowed into the other, as evidenced by the retention letter that referenced Eastland's potential

state. However, unlike Eastland's contacts with plaintiff and New Jersey, the court in Star Technology found the attorney's contacts with the forum were "irrelevant to [p]laintiff's cause of action against him." Ibid.

representation of plaintiff in matters in both states. We therefore assume for purposes of this appeal that in fact plaintiff solicited Eastland on the advice of an acquaintance and not as the result of conduct Eastland purposely directed into New Jersey, such as advertising or direct solicitation within the state. See Jardim, 461 N.J. Super. at 376. Citing several of our reported decisions, Eastland argues that this factual finding alone defeats the necessary "minimum contacts" prong of the jurisdictional test.

Further, Eastland contends that telephonic communications he had with plaintiff while Eastland was out of state cannot demonstrate "purposeful availment." See, e.g., Baanyan, 433 N.J. Super. at 477–78 ("[T]elephonic and electronic communications with individuals and entities located in New Jersey alone, are insufficient minimum contacts to establish personal jurisdiction over a defendant." (citing Pfundstein v. Omnicon Grp., 285 N.J. Super. 245, 252 (App. Div. 1995))). Nor is the mere existence of a contract between Eastland and plaintiff, i.e., the retainer agreement, sufficient alone to confer jurisdiction. See Burger King, 471 U.S. at 478 (noting "an individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum"). During argument before us, counsel noted that even the foreseeable need for Eastland's physical presence in New Jersey to prosecute plaintiff's RICO case was

insufficient to establish jurisdiction. See Lebel, 115 N.J. at 324 ("Of course, the mere foreseeability of an event in another state is 'not a sufficient benchmark for exercising personal jurisdiction.'" (internal quotations omitted) (quoting Burger King, 471 U.S. at 474)).

We have said, however, that "the combined effect of several contacts with the state, no one of which is sufficient, might under some circumstances establish 'minimum contacts.'" Bayway, 333 N.J. Super. at 433. Here, considering the totality of circumstances surrounding Eastland's relationship with plaintiff and New Jersey, we are convinced sufficient minimum contacts exist to permit the exercise of the Law Division's jurisdiction in this case. We address some of Eastland's specific arguments.

Several of our decisions have found insufficient minimum contacts when the out-of-state defendant did not solicit or seek out the services or business of the New Jersey plaintiff. See, e.g., Egg Harbor Care Ctr., 455 N.J. Super. at 354–55 (the out-of-state defendant, who was his infirmed mother's attorney-in-fact, was not subject to the New Jersey plaintiff's collection attempts because the defendant did not purposely create contacts within this state); Baanyan, 433 N.J. Super. at 477 (the out-of-state defendant-employee did not purposefully seek out employment from the New Jersey plaintiff company); Bayway, 333 N.J. Super. at 433–34 (the out-of-state defendant was nothing

18                                                                                    A-3696-19T2

more than a "passive buyer" of the New Jersey plaintiff's refined oil).  Eastland cites to some federal decisions involving out-of-state attorneys in which lack of solicitation on the part of the law firm was a factor that weighed against exercise of the forum's jurisdiction.

For example, in Sawtelle v. Farrell, New Hampshire residents filed suit in federal district court in New Hampshire against a Florida-based law firm for malpractice in its prosecution of a wrongful death claim filed in Florida state court on behalf of their son's estate.  70 F.3d 1381, 1386–87 (1st Cir. 1995).  No one from the firm ever physically entered New Hampshire, and its contact with the plaintiffs was limited to "primarily . . . written and telephone communications . . . in the state where they happened to live."  Id. at 1391.  In affirming dismissal of the complaint for lack of personal jurisdiction, the court noted that the defendant law firm "became involved in the subject representation not as the result of affirmative efforts to promote business in New Hampshire, but only after being requested . . . to commence litigation in Florida."  Id. at 1393.  Notably, the underlying wrongful death suit, unlike plaintiff's federal district court litigation here, was not filed in the plaintiffs' state of residence and did not require the Florida attorneys to seek admission in either the federal or state courts in New Hampshire.

In Sher v. Johnson, the plaintiffs, California residents, commenced a malpractice suit in federal district court in California against the defendants, a Florida lawyer, and his firm who had defended the plaintiff-husband against federal criminal charges brought in Tampa, Florida. 911 F.2d 1357, 1360 (9th Cir. 1990). In analyzing whether the defendants had purposely availed themselves of the privilege of conducting business in California, the court noted, "the partnership did not solicit Sher's business in California; Sher came to the firm in Florida. There is no 'substantial connection' with California because neither the partnership nor any of its partners undertook any affirmative action to promote business within California." Id. at 1362. Once again, unlike this case, the Florida attorneys had no contact with litigation in the state or federal courts in California.

However, in Carteret Savings Bank, FA v. Shushan, the plaintiff, a New Jersey bank, sued a Louisiana attorney and his firm in federal district court in New Jersey, alleging fraud and breach of fiduciary duties in the firm's representation of the bank in a Louisiana real estate transaction. 954 F.2d 141, 142–44 (3d Cir. 1992). During his representation of the bank in the transaction, the defendant-lawyer made a single visit to New Jersey to meet with the plaintiff's representatives. Id. at 146. Rejecting, among other arguments, the defendant-lawyers' contention that there were insufficient

20

minimum contacts because they did not solicit the bank's business, the Third Circuit concluded the "'purposeful availment' necessary for due process . . . was met by [the attorney's] act of traveling to New Jersey to consult with his client[,] . . . [c]oupled with the telephone calls and letters to New Jersey [.]" Id. at 150 (citation omitted).

Indeed, while solicitation in the forum state may demonstrate purposeful availment, the lack of solicitation is but one factor to consider in deciding whether an out-of-state attorney purposely availed himself of the forum state's jurisdiction. We note, for example, that the Sher court ultimately concluded California could assert jurisdiction over the Florida law firm based upon "the partnership's entire 'course of dealing' with the [plaintiffs,]" including calls, letters, visits to California and the execution of a deed of trust against the plaintiffs' California property to ensure payment of the law firm's fees. 911 F.2d at 1363–64.

We acknowledge that execution of the retainer agreement alone may be insufficient to demonstrate Eastland's purposeful availment for jurisdictional purposes. See, e.g., Burger King, 471 U.S. at 478 (noting "an individual's contract with an out-of-state party alone . . . clearly . . . cannot" "automatically establish sufficient minimum contacts in the other party's home forum"); Trinity Indus., Inc. v. Myers & Assocs., Ltd., 41 F.3d 229, 230 (5th Cir. 1995)

("The bare existence of an attorney-client relationship is not sufficient" to establish requisite minimum contacts.).

However, we have explained that "[t]he existence of a contractual relationship alone is not enough to sustain jurisdiction unless the foreign [party] entering into that relationship can reasonably have contemplated 'significant activities or effects' in the forum state." Bayway, 333 N.J. Super. at 431 (emphasis added) (quoting Corp. Dev. Specialists, Inc. v. Warren-Teed Pharm., Inc., 102 N.J. Super. 143, 155 (App. Div. 1968)). "While a contract 'will not automatically establish sufficient minimum contacts with the forum state, it will be examined in the context of the overall business transactions related to and surrounding the [agreement] and the parties' relationship.'" Id. at 431–32 (alteration in original) (quoting Creative Bus. Decisions, Inc. v. Magnum Commc'ns Ltd., Inc., 267 N.J. Super. 560, 570 (App. Div. 1993)); see also Burger King, 471 U.S. at 479 (noting a court must evaluate the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing").

Here, the retainer agreement referenced Eastland's course of dealing with plaintiff that began at least as early as March 2005, i.e., nearly nine months before the retainer agreement was sent to plaintiff. The retainer agreement notes Eastland's interview of plaintiff in New York in March 2005, Eastland's

trip to New York to speak with the FBI on plaintiff's behalf, and it clearly explains the near certain likelihood of litigation in order to pursue plaintiff's claims. The federal district court litigation was intended to result in "significant activities [and] effects" in New Jersey. After all, plaintiff alleged RICO violations against top New Jersey state officials. In short, the retainer agreement embodies more than a commercial, contractual arrangement and clearly documents the parties' past and anticipated future relationships, including pursuit of plaintiff's RICO claims in federal court in New Jersey.

While the possibility that Eastland's physical presence in New Jersey would be necessary at some point might not be sufficient alone to establish personal jurisdiction over him, courts have recognized that "territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there[.]" Burger King, 471 U.S. at 476. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 474 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Putting aside the merits of plaintiff's claims in this suit, it was entirely foreseeable that Eastland's representation of a New Jersey resident in New Jersey's federal district court might include appearances in New Jersey on his

client's behalf and might result in future litigation commenced by a disgruntled client.  See, e.g., Halak v. Scovill, 296 N.J. Super. 363, 370 (App. Div. 1997) ("A person who commits a tort arising out of a business dispute with a New Jersey resident and has some contacts with New Jersey in connection with that business transaction should reasonably anticipate being sued in New Jersey." (citing World-Wide Volkswagen, 444 U.S. at 297–98)).  Eastland could have reasonably anticipated being haled into state court in New Jersey.

B.

Eastland further contends that in seeking pro hac vice admission to the federal district court, he only agreed to subject himself to the jurisdiction of the district court for the limited purpose of disciplinary proceedings.  See L.Civ.R. 101.1(c) (the Local Rule) ("A lawyer admitted pro hac vice is within the disciplinary jurisdiction of this Court.").  He contrasts the Local Rule with Rule 1:21-2(c)(2), which broadly requires that any order admitting counsel pro hac vice in our state courts must include his or her "consent to the appointment of the Clerk of the Supreme Court as agent upon whom service of process may be made for all actions against the attorney or the attorney's firm that may arise out of the attorney's participation in the matter."  Eastland notes that the Local Rule incorporates specific provisions of our Court Rules, for example, the requirement that he contribute to the Client Security Fund and be subject to

24

contingent fee limits, but it does not incorporate <u>Rule</u> 1:21-2(c)(2)'s expansive submission to the jurisdiction of our state courts. Eastland also directs us to additional cases that specifically consider jurisdiction over attorneys admitted pro hac vice in the putative forum state.

Despite his restrictive reading of the Local Rule, we have little doubt that based upon his pro hac vice admission and under the circumstances presented, the federal district court for New Jersey could exercise jurisdiction over Eastland had plaintiff filed suit in that court. In <u>Wartsila NSD North America v. Hill International Inc.</u>, an attorney admitted pro hac vice to the federal district court in New Jersey to represent the plaintiff was named as a third-party defendant in the suit. 269 F. Supp. 2d 547, 551 (D.N.J. 2003). The attorney moved to dismiss based upon lack of jurisdiction. <u>Ibid.</u>

The court noted that the attorney's contacts with New Jersey during his representation of the plaintiff in the underlying arbitration were minimal, limited to two pieces of correspondence sent to a witness's home in New Jersey. <u>Id.</u> at 554. However, the court detailed the attorney's participation in the current litigation on behalf of the plaintiff, including preparation of the complaint, filing a successful application for pro hac vice admission, travel to New Jersey to take depositions and appear in court on one occasion, and sending and receiving other correspondence to and from New Jersey. <u>Id.</u> at

25

554–55.  Nevertheless, the court concluded these "contacts . . . do not provide a basis for exercising specific personal jurisdiction" because the defendant's "cause of action" against the attorney — his alleged malpractice in advising the plaintiff during an arbitration proceeding in North Carolina — did not "arise[] out of or directly relate[] to the [attorney's] forum-related contacts." Id. at 555.

However, the court found "it highly significant that [the attorney] ha[d] voluntarily assumed and maintained an ongoing attorney-client relationship with [the plaintiff] in connection with th[e] litigation." Id. at 556.  Although citing Sawtelle and Trinity Industries for the proposition that an attorney-client relationship, without more, was insufficient to demonstrate minimum contacts with the forum, the court distinguished those cases under the facts presented. Id. at 556–57.

The court quoted In re Prudential Insurance Company of America Sales Practices Litigation, 314 F.3d 99, 103 n.7 (3d Cir. 2002), for the proposition that the district court's jurisdiction over the attorney's client — the plaintiff — bestowed jurisdiction "over attorneys purporting to represent[] and act on behalf of" the client.  Wartsila, 269 F. Supp. 2d at 557.  In addition to the contacts already discussed, the court found "[p]erhaps most significant[]" the attorney's application and admission pro hac vice to represent the plaintiff in

New Jersey's federal district court.  Ibid.  The court found the attorney had "clearly availed himself of the privileges and benefits of practicing law before the federal courts of this state."  Ibid.  But see DiLoreto v. Costigan, 600 F. Supp. 2d 671, 692 (E.D. Pa. 2009) ("Repeatedly, courts have found that 'an attorney's entry of a court appearance pro hac vice in the forum state, without more, is not a substantial enough contact to permit that court to exercise jurisdiction over his person.'" (quoting Wolk v. Teledyne Indus. Inc., 475 F. Supp. 2d 491, 502 (E.D. Pa. 2007))).[8]

In any event, as Eastland properly notes, this litigation was filed in the Law Division, not the federal district court.  We therefore consider our reported cases that discuss the exercise of our state courts' jurisdiction over out-of-state attorneys.

In Rippon, we reversed the trial court's premature dismissal of the Pennsylvania plaintiff's complaint against a Pennsylvania law firm alleging tortious interference and consumer fraud arising out of the plaintiff's attempts to secure a mortgage to purchase real estate in New Jersey.  449 N.J. Super. at

---

[8]  Our research reveals at least one unreported federal district court case that claims, with equal earnest, that "District Courts throughout the country have held that a pro hac vice appearance may constitute a 'most significant[]' form of purposeful availment."  Ins. Comm'r v. Rubin, No. 05-4814, 2005 U.S. Dist. LEXIS 61989, at *11 (C.D. Cal. 2005, Aug. 17, 2005) (alteration in original) (quoting Wartsila, 269 F. Supp. 2d at 557).

354, 361–62. Although the defendants certified they had no office in New Jersey and did not regularly practice in New Jersey, the motion judge failed to note that an attorney from the firm had represented the plaintiff's estranged wife in a New Jersey municipal court. Id. at 361 n.8. We also observed that "a non-resident defendant can be subject to this state's specific jurisdiction based on a single tortious act committed by the defendant in New Jersey." Id. at 362 (citing Jacobs, 309 N.J. Super. at 461). We remanded for further proceedings. Id. at 369; see also Citibank, 290 N.J. Super. at 524, 526, 534 (remanding for further discovery to determine whether the third-party defendants, including a New York law firm, with no "ascertainable presence in New Jersey" could nevertheless be subject to New Jersey's jurisdiction because of their "solicitation" of the third-party plaintiff's decedent and the nature and conduct of their relationships).

In Reliance National Insurance Co. In Liquidation v. Dana Transport, Inc., a New Jersey transportation company, Dana Transport, filed a third-party complaint against a Florida-based attorney and his firm, Stanton, alleging negligence in its representation of Dana's interests in a Florida state court subrogation suit. 376 N.J. Super. 537, 541–43 (App. Div. 2005). Stanton had no connection with New Jersey, other than the single representation of Dana in the subrogation case, during which it placed calls and sent correspondence to

Dana's New Jersey terminal at Dana's direction. Id. at 542–43. The trial court denied Stanton's motion to dismiss for lack of jurisdiction. Id. at 543.

We cited Carteret Savings, Wartsila, and Sawtelle, finding Sawtelle most "closely analogous." Id. at 547–49. In reversing the motion court's order, Judge Wefing, writing for our court, explained:

> [T]he record here does not disclose such purposeful activity on the part of Stanton that the firm should reasonably have anticipated being sued in New Jersey. Stanton, a Florida firm, was retained to prosecute a subrogation action in the State of Florida for losses incurred following a shipment by an entity doing business in Florida from a Florida terminal. According to the record before us, Stanton was not even aware that Dana had a New Jersey location until after it had agreed to handle the Florida subrogation action. Stanton did not affirmatively reach out to Dana in New Jersey; rather, it was Dana who instructed Stanton not to deal with its employees at its Florida terminal, but only with its New Jersey personnel.
>
> We cannot equate Stanton's compliance with that directive to constitute "purposeful availment" of the benefits and protections of conducting activities in New Jersey.
>
> [Id. at 549–50 (quoting Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty., 480 U.S. 102, 112 (1987)).]

We reached the same conclusion, albeit for slightly different reasons, on somewhat similar facts in Washington v. Magazzu, 216 N.J. Super. 23 (App. Div. 1987). There, the New Jersey plaintiffs retained New Jersey counsel,

29

Magazzu, to represent them in a medical malpractice action in Virginia after their daughter suffered fatal injuries on the family's trip to that state. Id. at 24 – 25. Magazzu contacted an attorney in Virginia, Wicker, who reviewed the case and, after an exchange of correspondence with Magazzu, concluded it lacked any merit. Id. at 25. The plaintiffs filed suit in New Jersey alleging legal malpractice because Virginia's statute of limitations had expired in the interim. Id. at 25 – 26.

"We conclude[d] that Wicker purposefully established minimum contacts within New Jersey and thus plaintiffs ha[d] successfully negotiated the first step in the [personal jurisdiction] analysis." Id. at 27. However, citing Burger King, 471 U.S. at 476–78, we concluded that the exercise of jurisdiction was "unreasonable," given our state's "attenuated interest in adjudicating a dispute over the failure of a Virginia lawyer to commence an action in Virginia alleging medical malpractice that occurred in Virginia." Id. at 28–29.

It is readily apparent that Reliance, Washington, and, as already noted, Sawtelle, are factually distinguishable from this case. Each of those cases involved the forum plaintiffs' attempts to exert the forum's jurisdiction over the out-of-state attorney who had represented the plaintiffs' interests in underlying litigation filed outside the forum state. See Marjorie A. Shields, Annotation,

A-3696-19T2

In Personam Jurisdiction, Under Long-Arm Statute, over Nonresident Attorney in Legal Malpractice Action, 78 A.L.R. 6th 151 § 7 (2012) (collecting cases, including Washington, where courts have not found jurisdiction "over a non-resident attorney . . . based solely on out-of-state representation on the underlying matter"). Here, Eastland represented plaintiff, a New Jersey resident, in New Jersey's federal district court, pursuing plaintiff's claims against high-ranking New Jersey officials and governmental agencies.

We also view Eastland's pro hac vice admission to the federal district court as significant in deciding whether he purposely availed himself of the privilege of conducting business in New Jersey. The Local Rule requires compliance with two specific New Jersey Court Rules, Rules 1:21-7 and 1:28-2. Federal courts have recognized that the strictures in Rule 1:21-7 apply to attorneys admitted pro hac vice in federal district court in New Jersey, and that the Rule serves New Jersey's "paramount concern" that litigants not "pay an excessive contingent fee to utilize its legal processes." Elder v. Metro. Freight Carriers, Inc., 543 F.2d 513, 519 (3d. Cir. 1976). The federal courts have recognized that the purpose of contributions to the Client Security Fund pursuant to Rule 1:28-2 is to protect the clients of all attorneys practicing in the state from losses incurred because of their lawyer's dishonesty. Goldberg v. N.J. Lawyers' Fund for Client Prot., 932 F.2d 273, 278–79 (3d Cir. 1991).

Additionally, although not cited by Eastland, <u>Local Civil Rule</u> 103.1(a) of the federal district court for New Jersey provides: "The Rules of Professional Conduct of the American Bar Association <u>as revised by the New Jersey Supreme Court</u> shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law." <u>Ibid.</u> (emphasis added). <u>See</u> <u>Arnold, White & Durkee, Prof'l. Corp. v. Gotcha Covered, Inc.</u>, 314 N.J. Super. 190, 202 (App. Div. 1998) (noting attorney admitted pro hac vice in New Jersey federal district court is subject to Rules of Professional Conduct "as revised by the New Jersey Supreme Court"). In applying for pro hac vice admission, Eastland certified that he was "familiar with the rules governing the conduct of attorneys in New Jersey, including the rules of [the federal district court] and the Rules of the Code of Professional Responsibility," and he "intend[ed] to adhere to those rules." In <u>United States v. Miller</u>, the Third Circuit approved incorporation of our Court's ethical rules and their imposition on those admitted pro hac vice in New Jersey's federal district court, explaining:

> Incorporation of the body of New Jersey law on professional ethics, including interpretations of disciplinary rules, serves at least two legitimate purposes: It allows the district court to use the possibly greater facilities of the state to investigate the ethical standards and problems of local practitioners.

32

It also avoids the detriment to the public's confidence in the integrity of the bar that might result from courts in the same state enforcing different ethical norms.

[624 F.2d 1198, 1200 (3d Cir.1980) (citation omitted).]

We have no cause to examine the local rules of other district courts throughout the country to see if they contain similar requirements. It is enough for our purposes to note that the grant of an application for pro hac vice admission to practice in the federal district court for New Jersey, as happened here, binds the applicant to specific provisions regulating the practice of law in this state, provisions that derive solely from our Supreme Court's plenary, constitutional authority over the practice of law. Peteroy v. Trichon, 302 N.J. Super. 44, 47–48 (App. Div. 1997).

At least one other state's courts have concluded that pro hac vice admission in the federal courts of that state is significant purposeful conduct directed toward the forum state for purposes of establishing personal jurisdiction over an out-of-state attorney. In Nawracaj v. Genesys Software Systems, Inc., an Illinois lawyer, Nawracaj, represented his client, Genesys, in a federal lawsuit brought in Texas. 524 S.W.3d 746, 749 (Tex. App. 2017). Nawracaj retained local Texas counsel, applied for and was granted pro hac vice admission, and performed most of the work in the litigation. Id. at 750. The local firm eventually sued Genesys in Texas state court for unpaid legal

33

fees, and Genesys, in turn, named Nawracaj as a third-party defendant, including claims of negligence and fraud against their prior counsel. Ibid.

Nawracaj moved to dismiss for lack of personal jurisdiction. Ibid. Rejecting the argument, the appeals court concluded:

> One of Nawracaj's most significant Texas contacts is his application for admission to practice in the U.S. District Court for the Northern District of Texas pro hac vice, stating that he had been retained to provide legal representation for Genesys in its cases pending in that district. His application, which the court granted, permitted him to practice law in Texas for all matters concerning the federal litigation.
>
> As a result of his pro hac vice admission to represent Genesys in Texas, Nawracaj could anticipate litigation in Texas arising from or related to his representation. Nawracaj agreed to be bound by the local rules of the Northern District of Texas . . . as well as the Texas Disciplinary Rules of Professional Conduct.
>
> [Id. at 754; accord Jackson v. Kincaid, 122 S.W.3d 440, 448–49 (Tex. App. 2003), review granted, judgment vacated, and remanded by agreement (Dec. 10, 2004) (holding Oklahoma attorneys' pro hac vice appearance before federal bankruptcy court in Texas on behalf of Texas residents was significant factor in finding personal jurisdiction over the attorneys in clients' malpractice suit in Texas state court).]

The court also specifically rejected Nawracaj's claim that jurisdiction was improper because he never appeared in federal court in Texas. Id. at 449–50.

In several meaningful ways, the rules of local practice in the federal

district court bind attorneys admitted to practice in that court to the strictures applicable to attorneys licensed in New Jersey. Eastland's application for pro hac vice admission in plaintiff's underlying federal lawsuit is significant in establishing he purposely availed himself of the privilege of conducting activities within this state. It was "[a]n intentional act calculated to create an actionable event in a forum state[.]" Waste Mgmt., 138 N.J. at 126.

In sum, considering the totality of the circumstances, we conclude Eastland had sufficient minimum contacts with New Jersey to permit the Law Division to exercise specific personal jurisdiction over him and his associated firms with respect to plaintiff's complaint.

C.

"[O]nce it is established that defendant's activities relating to the action established minimum contacts with the forum state, the 'fair play and substantial justice' inquiry must still be made." Lebel, 115 N.J. 328 (quoting Burger King, 471 U.S. at 476).

> The burden here, however, shifts, for it is the "nonresident defendant who has been found to have minimum contacts with the forum [who] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." We have made clear that "[t]his determination requires evaluation of such factors as the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the

most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

[McKesson Corp. v. Hackensack Med. Imaging, 197 N.J. 262, 278–279 (2009) (alterations in original) (internal quotations omitted) (quoting Lebel, 115 N.J. at 328).]

Eastland argues that having to defend against plaintiff's suit in New Jersey would be "hugely burdensome," and plaintiff's "repeated fraudulent and illegal conduct" makes the court's exercise of its jurisdiction inequitable. We reject both contentions.

"[H]aving to defend oneself in a foreign jurisdiction will almost always entail some measure of inconvenience[,]" and the burden "only becomes meaningful where defendants can demonstrate some 'special or unusual burden.'" Wartsila, 269 F. Supp. 2d. at 560 (quoting Sawtelle, 70 F.3d at 1395). No such special burden has been brought to our attention in this case.

Moreover, it cannot seriously be contended that Mississippi or any other state has an interest in this matter superior to that of New Jersey. See, e.g., Egg Harbor Care Ctr., 455 N.J. Super. at 353 (In evaluating "notions of fair play and substantial justice[,]" courts should "evaluate . . . the forum state's interests, and the interest of the plaintiff in obtaining relief."). Plaintiff's prior conduct, no matter how flagrant, does not subvert New Jersey's legitimate exercise of jurisdiction to permit adjudication in its courts of a New Jersey

36

resident's claims that arise out of alleged tortious conduct by Eastland in this state.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION